UNITED STATES v. MASON (four cases).

(Circuit Court, D. Massachusetts. March 4, 1910.)

Nos. 45–48.

1. EMBEZZLEMENT (§ 34*)—SUFFICIENCY OF INDICTMENT—"TO EMBEZZLE" DE-FINED.

In an indictment against a public officer for embezzlement of public funds alleged to have been in his possession as such officer, the rule applied that it is sufficient to charge that he embezzled the same, without more.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 53, 54; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 3, pp. 2350–2358; vol. 8, p. 7649.]

2. EMBEZZLEMENT (§ 28*)—INDICTMENT—FUNDS EMBEZZLED—DESCRIPTION.

An indictment for embezzlement specifying the amount of money alleged to have been embezzled, and stating that the grand jury is unable to give further information, sufficiently describes the funds.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 42; Dec. Dig. § 28.*]

3. EMBEZZLEMENT (§ 21*) — CLERKS OF FEDERAL COURTS — FEES AND EMOLU-MENTS—OWNERSHIP.

Money received by a clerk of a Circuit or District Court of the United States as fees and emoluments is not public money of the United States when so received within the meaning of Rev. St. § 5490 (U. S. Comp. St. 1901, p. 3704).

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 29; Dec. Dig. § 21.*]

4. CLERKS OF COURTS (§ 61*)—CLERKS OF FEDERAL COURTS—RETURNS OF FEES AND EMOLUMENTS—OATH.

The provision of Rev. St. § 833 (U. S. Comp. St. 1901, p. 642), that the semiannual returns required thereby to be made by district attorneys, clerks of the Circuit and District Courts, and marshals shall be verified by the oath of the officer making the same was not repealed by implication with respect to the returns by clerks by Appropriation Act June 28, 1902, c. 1301, § 1, 32 Stat. 475 (U. S. Comp. St. Supp. 1909, p. 239).

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. 61.*]

5. CLERKS OF COURTS (§ 61*)—RETURNS OF FEES—OATH—AUTHORITY TO AD-MINISTER—DISTRICT JUDGE.

The oath of a clerk of a District Court to his semiannual return may be taken by the district judge.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. § 61.*]

6. CLERKS OF COURTS (§ 76*)—INDICTMENT—CLERK OF FEDERAL COURT—FALSE OATH TO RETURN.

The provision of Rev. St. § 833 (U. S. Comp. St. 1901, p. 642), and of Act June 28, 1902, c. 1301, § 1, 32 Stat. 475 (U. S. Comp. St. Supp. 1909, p. 239), requiring clerks of the District Court to make semiannual returns of fees and emoluments on the 1st days of January and July of each year, or within 30 days thereafter, is a mere regulation; and the fact that the return is not made until after the expiration of the prescribed time is no defense to an indictment charging the clerk with perjury in making a false oath to such return.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. § 76.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is a copy of the indictment in case No. 45:

"The United States of America.

"At a District Court of the United States of America, for the District of Massachusetts, begun and holden at Boston, within and for said district, on the first Tuesday of December in the year of our Lord one thousand nine hundred and nine.

"First Count. The jurors for the United States of America, within and for the District of Massachusetts, upon their oath, present that Frank H. Mason, of Boston, in said district, during all of the year nineteen hundred and eight was, and ever since then has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and, on the first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, certain money of the United States, a particular description whereof is to said grand jurors unknown, to the amount and value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his office as such officer and clerk, and under authority and claim of authority as such officer and clerk, and which he should, on said first day of February, in the year nineteen hundred and nine, have accounted for and paid to the United States at Boston aforesaid in the manner provided by law; and that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the same money unlawfully and feloniously did embezzle.

"Second Count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason during all of the year nineteen hundred and eight was, and ever since has been, an officer of the United States, to wit, clerk of the District Court of the United States for the district of Massachusetts, and on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, certain public moneys of the United States, a particular description whereof is to said grand jurors unknown, to wit, moneys to the amount and of the value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his officer as such officer, and under authority and claim of authority as such officer, and were a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances authorized by law to be retained by him for said year nineteen hundred and eight, which said public moneys said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, as such officer, was charged, by certain acts of Congress, to wit, sections 823, 828, and 844 of the Revised Statutes of the United States, and the act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, safely to keep; that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the same public moneys unlawfully did fail safely to keep as required by said Acts of Congress, and, on the contrary, the same then and there unlawfully did convert to his own use, and that thereby said Frank H. Mason then and there was guilty of embezzlement of said public moneys so converted.

"Third Count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason during all of the year nineteen hundred and eight was, and ever since has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, certain public moneys of the United States, a particular description whereof is to said grand jurors unknown, to wit, moneys to the amount and of the value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his office as such officer, and under authority and claim of authority as such officer, and were a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances au-

thorized by law to be retained by him for said year nineteen hundred and eight, which said public moneys said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, as such officer, was charged, by certain acts of Congress, to wit, sections 823, 828, and 844 of the Revised Statutes of the United States, and the act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, safely to keep; that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the last-mentioned public moneys unlawfully did fail safely to keep as required by said acts of Congress, and, on the contrary, the same then and there unlawfully and fraudulently did convert to his own use, and that thereby said Frank H. Mason then and there was guilty of embezzlement of said public moneys so converted.

"Fourth Count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason during all of the year nineteen hundred and eight was, and ever since then has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, a portion of the money of the United States, a particular description whereof is to said grand jurors unknown, to wit, money to the amount and of the value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his office as such officer, and under authority and claim of authority as such officer, and was a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances authorized by law to be retained by him for said year nineteen hundred and eight, which money last aforesaid he should, on said first day of February, in the year nineteen hundred and nine, have paid to the United States at Boston aforesaid in the manner provided by law, and that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the same money unlawfully, wrongfully and fraudulently did convert to his own personal use and embezzle.

"Fifth Count. And the jurors aforesaid, on their oath aforesaid, do further present that Frank H. Mason, of Boston, in said district, at said Boston, on the twenty-fifth day of May, in the year nineteen hundred and nine, said Mason being then and there an officer, to wit, the clerk of the District Court of the United States for the District of Massachusetts, and a person charged, by certain acts of congress, to wit, sections 823, 828 and 844 of the Revised Statutes of the United States, and the act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, with the safe keeping of the public moneys of the said United States, and then and there having such public moneys in his charge as such officer and person, did then and there fail, in the manner following, safely to keep the same, that is to say, by unlawfully converting to his own use of the said public moneys the amount and value of three hundred and eighty-seven dollars. Whereby, and by force of the statute in such case made and provided, the said Frank H. Mason has committed the crime of embezzlement.

"Sixth Count. And the jurors aforesaid, on their oath aforesaid, do further present that said Frank H. Mason, of Boston, in said district, at said Boston, on the twenty-fifth day of May, in the year nineteen hundred and nine, said Mason being then and there an officer, to wit, the clerk of the District Court of the United States for the District of Massachusetts, and a person charged, by certain acts of Congress, to wit, sections 823, 828 and 844 of the Revised Statutes of the United States, and the Act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, with the safe keeping of the public moneys of the said United States, and then and there having such public moneys in his charge as such officer and person, did then and there fail, in the manner following, safely to keep the same, that is to say, by unlawfully and fraudulently converting to his own use of the said public moneys the amount and value of three hundred and eighty-seven dollars. Whereby, and by force of the statute in such case made and provided, the said Frank H. Mason has committed the crime of embezzlement."

The different counts herein are different descriptions of the same acts.

The indictment in case No. 48 is as follows:

### "The United States of America.

"At a District Court of the United States of America, for the District of Massachusetts, begun and holden at Boston, within and for said district, on the first Tuesday of December in the year of Our Lord one thousand nine hundred and nine.

"First Count. The jurors for the United States of America, within and for the District of Massachusetts, upon their oath, present that Frank H. Mason, of Boston, in said district, at the several times of the committing of the several offenses in this indictment hereafter charged, was clerk of the District Court of the United States for the District of Massachusetts, and as such clerk was by law required to make to the Attorney General of the United States, on the first days of January and July, in each year, and in the form prescribed by said Attorney General, a written return for the half year ending on said days respectively, showing, among other things, all the fees and emoluments of his office, of every name and character, and all the necessary expenses of his office, and to verify such return by his oath; that said Frank H. Mason, on the twenty-fourth day of September, in the year nineteen hundred and eight, at Boston aforesaid, then so being such clerk, came in person before the Honorable Frederic Dodge, then and before that time judge of the District Court of the United States for the District of Massachusetts, and then and there made and subscribed a certain declaration and certificate in writing before said judge, on the occasion of his making his return as aforesaid as such clerk for the half year ending on the thirtieth day of June, in the year nineteen hundred and eight, and was, on the day first aforesaid, there in due manner sworn by said judge touching the truth of the matters contained in said return, and took his corporal oath, before said judge, that said written declaration and certificate by him the said Frank H. Mason subscribed was then just and true, he the said Frederic Dodge as such judge then and there having competent authority, and being a tribunal and officer having authority, to administer said oath and take said written declaration and certificate; and that said Frank H. Mason then and there falsely, corruptly, and willfully, and contrary to his said oath, did in and by his said written declaration and certificate declare and certify certain material matters, among other things, in substance and to the effect that said return was in all respects just and true, according to his best knowledge and belief, and that he had neither received, directly or indirectly, any other money or consideration than therein stated; that the total amount of fees and emoluments received in bankruptcy proceedings was six thousand five hundred and fifteen dollars and eighty-five cents; that the total amount of fees and emoluments, not in bankruptcy proceedings, earned from parties other than the United States, was six hundred and thirty-four dollars and eighty-three cents; and that the balance then due to the United States from him as such clerk was four thousand and nineteen dollars and forty-six cents; whereas in truth and in fact said Frank H. Mason, at the time he took said oath and made and subscribed said written declaration and certificate, had, as he then well knew, received as such clerk, during said half year, fees and emoluments in bankruptcy proceedings a much greater total sum, to wit, the sum of six thousand six hundred and seventy-four dollars and eighty-five cents, and had earned fees and emoluments, not in bankruptcy proceedings, from parties other than the United States, a much greater total sum, to wit, the sum of six hundred and eighty-one dollars and eighty-three cents, and the balance then due to the United States from him as such clerk was a much greater sum, to wit, four thousand two hundred and twenty-five dollars and forty-six cents; and whereas in truth and fact said Frank H. Mason did not then believe it to be true that the total amount of such fees and emoluments so received by him in bankruptcy proceedings was six thousand five hundred and fifteen dollars and eighty-five cents, or that the total amount of fees and emoluments so earned by him, not in bankruptcy proceedings and from parties other than the United States, was six hundred and thirty-four dollars and eighty-three cents, or that such balance then due to the United States was four thousand and nineteen dollars and forty-six

cents; and so said Frank H. Mason, at the time and place and in manner and form aforesaid, unlawfully did commit willful and corrupt perjury.

"Second Count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason, of Boston, in said district, at the time of the committing of the offense in this count of this indictment hereafter charged, was clerk of the District Court of the United States for the District of Massachusetts, and as such clerk was by law required to make to the Attorney General of the United States, on the first days of January and July, in each year, and in the form prescribed by said Attorney General, a written return for the half year ending on said days respectively, showing, among other things, all the fees and emoluments of his office, of every name and character, and all the necessary expenses of his office, and to verify such return by his oath; that said Frank H. Mason, on the third day of February, in the year nineteen hundred and nine, at Boston aforesaid, then so being such clerk, came in person before the Honorable Frederic Dodge, then and before that time judge of the District Court of the United States for the District of Massachusetts, and then and there made and subscribed a certain declaration and certificate in writing before said judge, on the occasion of his making his return as aforesaid as such clerk for the half year ending on the thirty-first day of December, in the year nineteen hundred and eight, and was on the day in this count first aforesaid, there in due manner sworn by said judge touching the truth of the matters contained in said return, and took his corporal oath, before said judge, that said written declaration and certificate by him the said Frank H. Mason subscribed was then just and true, he the said Frederic Dodge, as such judge, then and there having competent authority, and being a tribunal and officer having authority, to administer said oath and take said written declaration and certificate; and that said Frank H. Mason then and there falsely, corruptly and willfully, and contrary to his said oath, did in and by his said written declaration and certificate declare and certify certain material matters, among other things, in substance and to the effect that said return was in all respects just and true, according to his best knowledge and belief, and that he had neither received, directly or indirectly, any other money or consideration than therein stated; that the total amount of fees and emoluments received in bankruptcy proceedings was five thousand and eighty-nine dollars and ninety-five cents; that the total amount of fees and emoluments, not in bankruptcy proceedings, earned from parties other than the United States, was four hundred and fifty-five dollars and thirty-two cents; and that the balance then due to the United States from him as such clerk was one thousand six hundred and thirty-nine dollars and forty-one cents; whereas, in truth and in fact, said Frank H. Mason, at the time he took said oath and made and subscribed said written declaration and certificate, had, as he then well knew, received as such clerk, during said half year, fees and emoluments in bankruptcy proceedings a much greater total sum, to wit, the sum of five thousand two hundred and eight dollars and ninety-five cents, and had earned fees and emoluments, not in bankruptcy proceedings, from parties other than the United States, a much greater total sum, to wit, the sum of five hundred and seventeen dollars and thirty-two cents, and the balance then due to the United States from him as such clerk was a much greater sum, to wit, five thousand three hundred and eighty-nine dollars and ninety-five cents; and whereas in truth and fact said Frank H. Mason did not then believe it to be true that the total amount of such fees and emoluments so received by him in bankruptcy proceedings was five thousand and eighty-nine dollars and ninety-five cents, or that the total amount of fees and emoluments so earned by him, not in bankruptcy proceedings and from parties other than the United States, was four hundred and fifty-five dollars and thirty-two cents, or that such balance then due to the United States was one thousand six hundred and thirty-nine dollars and forty-one cents; and so said Frank H. Mason, at the time and place and in manner and form in this count aforesaid, unlawfully did commit willful and corrupt perjury.

"Third Count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason, of Boston, in said district, at the time of the committing of the offense in this count of this indictment hereafter

charged, was clerk of the District Court of the United States for the District of Massachusetts, and as such clerk was by law required to make to the Attorney General of the United States, on the first days of January and July, in each year, and in the form prescribed by said Attorney General, a written return for the half year ending on said days respectively, showing, among other things, all the fees and emoluments of his office, of every name and character, and all the necessary expenses of his office, and to verify such return by his oath: that said Frank H. Mason, on the eleventh day of August, in the year nineteen hundred and nine, at Boston aforesaid, then so being such clerk, came in person before the Honorable Frederic Dodge, then and before that time judge of the District Court of the United States for the District of Massachusetts, and then and there made and subscribed a certain declaration and certificate in writing before said judge, on the occasion of his making his return as aforesaid as such clerk for the half year ending on the thirtieth day of June, in the year nineteen hundred and nine, and was, on the day in this count first aforesaid, there in due manner sworn by said judge touching the truth of the matters contained in said return, and took his corporal oath, before said judge, that said written declaration and certificate by him the said Frederic Dodge, as such judge, then and there having competent authority, and being a tribunal and officer having authority, to administer said oath and take said written declaration and certificate; and that said Frank H. Mason then and there falsely, corruptly and willfully, and contrary to his said oath, did in and by his said written declaration and certificate declare and certify certain material matters, among other things, in substance and to the effect that said return was in all respects just and true, according to his best knowledge and belief, and that he had neither received, directly or indirectly, any other money or consideration than therein stated; that the total amount of fees and emoluments received in bankruptcy proceedings was six thousand three hundred and ninety-one dollars and fifty-eight cents; that the total amount of fees and emoluments, not in bankruptcy proceedings, earned from parties other than the United States, was five hundred and nineteen dollars and twenty-three cents; and that the balance then due to the United States from him as such clerk was five thousand two hundred and seventy-five dollars and eighty-one cents; whereas in truth and in fact said Frank H. Mason, at the time he took said oath and made and subscribed said written declaration and certificate, had, as he then well knew, received as such clerk, during said half year, fees and emoluments in bankruptcy proceedings a much greater total sum, to wit, the sum of six thousand five hundred and forty-two dollars and eight cents, and had earned fees and emoluments, not in bankruptcy proceedings, from parties other than the United States, a much greater total sum, to wit, the sum of five hundred and sixty dollars and seventy-three cents, and the balance then due to the United States, from him as such clerk was a much greater sum, to wit, five thousand four hundred and sixty-seven dollars and eighty-one cents; and whereas in truth and fact said Frank H. Mason did not then believe it to be true that the total amount of such fees and emoluments so received by him in bankruptcy proceedings was six thousand three hundred and ninety-one dollars and fifty-eight cents, or that the total amount of fees and emoluments so earned by him, not in bankruptcy proceedings and from parties other than the United States, was five hundred and nineteen dollars and twenty-three cents, or that such balance then due to the United States was five thousand two hundred and seventy-five dollars and eighty-one cents; and so said Frank H. Mason, at the time and place and in manner and form in this court aforesaid, unlawfully did commit willful and corrupt perjury."

The following are the statutes prescribing the duties of the clerk of the District Court:

Rev. St. § 833 (U. S. Comp. St. 1901, p. 642):
"Every * * * clerk of a District Court * * * shall, on the first days of January and July, in each year, or within thirty days thereafter, make to the Attorney General, in such form as he may prescribe, a written return for the half year ending on said days, respectively, of all the fees and

emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act. * * * Said returns shall be verified by the oath of the officer making them."

Rev. St. 844 (U. S. Comp. St. 1901, p. 647):

"Every * * * clerk * * * shall, at the time of making his half-yearly return to the Attorney General, pay into the treasury, or deposit to the credit of the Treasurer, as he may be directed by the Attorney General, any surplus of the fees and emoluments of his office, which said return shows to exist over and above the compensation and allowances authorized by law to be retained by him."

Act June 28, 1902, c. 1301, § 1, 32 Stat. 475 (U. S. Comp. St. Supp. 1909, p. 239):

"For Fees of Clerks, $240,000: Provided, that each clerk of the District and Circuit Courts shall, on the first days of January and July of each year, or within thirty days thereafter, make to the Attorney General, in such form as he may prescribe, written returns for the half-year ending on said days, respectively, of all fees and emoluments of his office of every name and character, and of all necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year; and the word 'emoluments' shall be understood as including all amounts received in connection with the admission of attorneys to practice in the court, all amounts received for services in naturalization proceedings, whether rendered as clerk, as commissioner, or in any other capacity, and all other amounts received for services in any way connected with the clerk's office."

Frank H. Mason was indicted for embezzlement. On demurrer to the indictments. Overruled.

Asa P. French, U. S. Atty., and J. B. Ferber, Asst. U. S. Atty. Boyd B. Jones and George L. Wilson, for defendant.

PUTNAM, Circuit Judge (orally). I will first take up the indictments relating to the alleged embezzlement of moneys, which I think are Nos. 45, 46, and 47. There are two classes of counts here. Counts 2, 3, and 4 relate specifically to surplus fees and emoluments of the clerk of the United States District Court, and as such clerk he is charged by those counts with embezzling that surplus. The other counts cover a disposition of funds in his hands without alleging the origin of them; but they all charge embezzlement. The expression "to embezzle" was settled in the Court of Appeals for this circuit as sufficient, the same as the words "steal, take, and carry away," to show a willful conversion unlawfully and fraudulently to one's own use. Jewett v. United States, 100 Fed. 832, 837, 41 C. C. A. 88, 53 L. R. A. 568; Dickinson v. United States, 159 Fed. 801, 802, 86 C. C. A. 625, 626. In all these counts the description of the funds alleged to have been embezzled is sufficient, because the grand jury specifies an amount, and says that it is unable to give further information. Under several decisions of the Supreme Court, that is sufficient, and my recollection is that it is sufficient until disproved. Counts 2, 3, and 4 relate, however, clearly to moneys which came into Mason's hands as fees and emoluments, and no fair consideration of the counts can leave out that limitation. All the other counts, while they have been discussed as based on this statute or that statute, contain finally a general charge of em-

bezzlement, which is sufficient, as I have said, although perhaps they contain other matters which may be regarded as surplusage. They are so framed that, with reference to alleged embezzlements, the United States can rest them upon any statute which they will fit in a general way. Therefore all those counts must stand on these demurrers. The demurrers, however, are not to each indictment as a whole, but to each and every count. So, notwithstanding some counts are good, other counts may be adjudged invalid.

A supposed fundamental question made by the parties is as to the nature of the title by which the clerk of the District Court holds the moneys he receives as fees and emoluments. The Supreme Court has characterized the nature of this title in two different ways; but in each case in a mere dictum relating not at all to any essential matter, each being disposed of on fundamental points to which the dictum had no necessary relation. Expressions in the case of United States v. Hill, 123 U. S. 681, 8 Sup. Ct. 308, 31 L. Ed. 275, would indicate that, in the view of the court, the moneys, until some step was taken under the statutes other than the mere collection of them from litigants, are the moneys of the clerk. The other expression, cited by the United States, which was repeated by the Circuit Court of Appeals in this Circuit in United States v. Mason, 129 Fed. 742, 64 C. C. A. 270, was again a mere dictum, but has a different outlook. To determine this precise point we have to look back to the time when these moneys were undoubtedly the moneys of the clerk as they were received. That was the law of the United States courts in accordance with the law of Great Britain generally that fees and emoluments are the property of the person receiving them, and this to such an extent that under the common law many offices were sold outright, and allowed to be sold; the purchase money being based upon the amount of fees and emoluments which the holder of the office might receive. There was no question about that until the statute of 1853, now Rev. St. §§ 823, 828 (U. S. Comp. St. 1901, pp. 632, 635). To that time the whole question of the clerk's fees and emoluments was mostly a matter of tradition. Then the statute undertook to regulate the fees and emoluments of clerks, and did so to a certain extent, leaving still a large remnant as a matter of judicial practice. In United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, the clerk prevailed on a question of usage necessary to enable the court to construe the act of 1853 (Act Feb. 26, 1853, c. 80, 10 Stat. 161). All this indicates the nature of the right which we are considering. Yet whether under the present statutes the fees and emoluments received by him are the clerk's moneys, quasi moneys, or whether they are moneys of the United States when they are received, and whether the surplus in his hands is his moneys until he has made the return which the statute requires, or whether they are moneys of the United States, one thing is clear—that by settled usage, and undoubtedly by the law, the clerk never deposits the fees and emoluments under the subtreasury system of the United States. He always holds them in his own hands until he makes his return, when by the statute he is required to pay the surplus to the United States. He uses to some extent those moneys for his family expenses and for his own expenses; and there can be no question that an interpretation of

the law which permits this is a reasonable one and a necessary one, because, aside from those moneys, the clerk is not supposed to have any resources for his support during the six-months period which his returns cover. Such is the practice, and such I have no doubt is the law; and so those moneys have never been covered by the subtreasury acts. Therefore there is always a margin of doubt and question— sometimes large, sometimes small—but a margin of doubt and question as to what portion of those moneys belongs to the United States; that is, what is the surplus, and what portion belongs to the clerk.

As the result, there are two roads marked out by the statutes of the United States, one that of the subtreasury moneys, or moneys which the clerk necessarily pays into the subtreasury, or some depository, and which can be drawn only by checks countersigned by the judge, and the other that of the moneys collected by the clerk as fees and emoluments, always an uncertain, undetermined amount until finally closed by an adjudication of the department satisfactory to the clerk, or by civil litigation in the courts. In view of the fact that section 5490 of the Revised Statutes (U. S. Comp. St. 1901, p. 3704), on which the United States orally bases one of its counts, will, on examination, be found to be a part of the subtreasury act (Act Aug. 6, 1846, c. 90, 9 Stat. 63), it has no relation to these proceedings, so far as they concern fees and emoluments of the clerk's office, although I agree with the district attorney that the statute is a regulatory statute, intended to guard the finances of the United States by clear rules, and to point out positively the place where the moneys shall be deposited, and what shall be done with them. The subtreasury system points out one path; but what we have here relates to that uncertain state of accounts of which I have spoken, and to the moneys which the clerk is not required to deposit instantly, but which he may apply in part to his own personal uses or to his family uses, and which travel an entirely different road. That in my judgment is marked out by what was section 833 of the Revised Statutes, coupled with section 844. The two go together as parts of the act of 1853 about fees, and must be read together.

I may, however, call attention to another statute which has not been explained to me; that is, Act Feb. 22, 1875, c. 95, 18 Stat. 333 (U. S. Comp. St. 1901, p. 648), and sequence. Section 5 of that act (page 621) provides in substance that, if any clerk shall willfully refuse or neglect to make any report, certificate, or statement, or other document, required by law to be by him made, or shall willfully refuse or neglect to forward any such report, certificate, statement, or document to the department, officer, or person to whom by law the same should be forwarded, the President may remove him. Then the act provides further, in section 6 (page 622), that, if any such neglect or refusal occurs, the clerk is guilty of a misdemeanor, and may be punished by fine not exceeding $1,000 or by imprisonment not exceeding one year.

Now, to my mind, there is, in all this, a plain, straight-forward system from the beginning to the end, distinguishing these matters before us, so far as fees and emoluments are concerned, from all the statutes which relate to the subtreasury of the United States. They are entirely separate and distinct systems. The United States are entitled to be protected by these statutes, and the clerk also is entitled to be

protected by them; and, so far as they can relieve him from unjust litigation and from being charged with embezzlement, he is entitled to be relieved. Under sections 833 and 844, which provide, not only for the semiannual returns, but also that, when the returns are made, and not sooner, the clerk shall pay into the treasury of the United States the amounts shown by them to be due from him, it is my opinion that the clerk cannot be charged in any way criminally for any disposition of any part of the fees and emoluments received by him as fees and emoluments under any general provisions of the statutes of the United States with reference to embezzlement. If the clerk fails to make a return, or refuses to make a return, he may be proceeded against under the act of 1875; and whether in the event he refuses or neglects to avail himself of the opportunity of explaining his finances given him by sections 833 and 844 of the Revised Statutes referred to, or whether in the event he refuses or neglects to pay over a surplus which has been definitely ascertained on an adjustment of his accounts or by a civil suit, he can be proceeded against criminally under any other statute than that of 1875, I have no occasion to ascertain at present. Certainly I regard any proceeding of the character I am discussing, relating to moneys received by the clerk as fees and emoluments, as futile in law unless they allege that he refused to make his return, or unless they allege that, if he made the return, he refuses to make payment at the end of the time provided by section 844. These allegations are lacking in the present case.

Therefore the judgment will be that the three counts which do not relate to moneys received by the clerk as fees and emoluments are sufficient in law, and the respondent will be directed to answer over to them. So far as the other three counts are concerned, those which relate to moneys received by him as fees and emoluments, the counts are not sufficient in law, and are adjudged invalid; and, so far as those counts are concerned, the judgment will be that the respondent goes without day.

I will now take the other indictment. There the difficulty is a very serious one indeed. Whatever my conclusion, I have very great doubts. The difficulty comes, not from any general rules of law, but from the fact that Congress saw fit in an appropriation act where it did not belong to make a provision of the crudest character. Section 833 of the Revised Statutes provided for a semiannual return by the clerk, as well as by the district attorney and the marshal. Then at the close it contained the following: "Said returns shall be verified by the oath of the officer making them." Act June 28, 1902, c. 1301, 32 Stat. 419, was a general sundry civil appropriation act, making appropriations for the fiscal year ending June 30, 1903. It was approved June 28, 1902, which was two days before the semiannual return of the clerk, the respondent here, was required to be made in accordance with section 833 of the Revised Statutes. It made no reservation of that return, but contained a repealing clause at page 481 that "all laws or parts of laws in conflict with the provisions of this act be and the same are hereby repealed." For a long time my mind was much taken up with the rules in reference to the effect of repealing statutes, but difficulties underlie that. Two statutes cannot stand in the same place any more than two persons can

177 F.—36

stand in the same place; and this statute, which was found in the bowels of the appropriation act, modified the form of return to be made, and omitted the requirement for an oath. In the form of the return some changes were very evidently important to be made. One was a mere matter of form, namely, it omitted the marshal and the district attorney, each at that time on a salary, and the other included specifically certain items which it classified as fees and emoluments which were not clearly included in any previous act. The provision does not purport to be an amendment. It contains on its face no reference to the Revised Statutes; that is, to the section in question, 833. It simply is made out of whole cloth. It reads, in fact, the same as though there had been no previous statute. Now, the repealing provision of the Revised Statutes does not seem to reach this case exactly. It does not seem to reach the case so far as the return of the clerk due July 1, 1902, was concerned. That is left in the air; but I need not trouble on this account, because there is no practical question about it. This act of 1902 did, however, occupy the place occupied by section 833 of the Revised Statutes, and therefore in a certain sense, at least, it repealed it by inevitable effect.

The expressions of the Supreme Court are not always complete with reference to what are repealing statutes by implication. They ordinarily say that by implication a new statute does not repeal if it is possibly reconcilable with the old statute. The Supreme Court guards itself very carefully in that way, but it has sometimes failed to speak of the effect by implication of a statute which covers the same ground as a previous statute, when it is impossible for the two to stand together. However, the question is not one of repeal, but whether or not Congress intended to bring forward from the Revised Statutes to the act of 1902 the provision for an oath. The difficulty in my mind is that that provision for an oath is for an oath to the return declared in section 833, while now I am asked to establish an oath to a return which is different, essentially different, in its subject-matter. Right there is where the question lies in my mind. If, however, I do not bring forward the provision for an oath in section 833, I repeal section 844 of the Revised Statutes, because section 833 relates to the same return as section 844, which requires that the clerk pay over the moneys. I would have to hold that Congress has unintentionally repealed all provisions for paying after the return is made. It is easy to imagine extreme cases where a re-enactment of a statute would bring forward what was not in terms re-enacted. Take a criminal statute imposing a penalty of life imprisonment, or of hanging, in case of murder! The statute, as your Massachusetts statutes do, may define murder, the different degrees of murder, with a great deal of detail. Let the Legislature re-enact a new description of the details of the offense, but omit in terms to re-enact the penalty! Both statutes could not stand together, but no court would venture to hold that the penalty was lost. That would be an extreme case. This here, which is a matter of regulation, requires a longer stretch on the part of the court than the extreme case which I suggest. Nevertheless, with great doubt, and with the possibility of a revision of my views at a subsequent stage of the case, I think that I must hold that the provision for an oath has been brought forward by

the intention of Congress or the inevitable condition of things, and that the court cannot disregard it.

The other objections to the indictment of which I am speaking are not so serious. They are not free from doubt, but still they are objections on which the views of the court are clearer. I have no doubt, although there is no express provision, that the oath may be taken by the district judge. There is a settled rule of law, of the common law, that a judge of a superior court is a magistrate who can take any oath which the law requires, either in court or out of court; and this rule has been adopted by the common practice in the United States in the federal courts, and applies to the judges of those courts. I think that Mr. Justice Swayne in the case cited here so holds; and the Supreme Court in the case cited by him also so holds. At any rate, that is the settled practice. So the only question would be as to the effect of the act of 1902—whether the oath was required. If I am right in my view that the oath was required, then I am clear that the district judge had the right to take the oath. I am also clear that, if there was any question with reference to this return under the act of 1902 for investigation by the judge of the District Court, he had a right to take the oath in reference thereto whether there was any provision of statute therefor or not. But there does not seem to be any statute which rests upon the district judge any right or obligation to investigate that return. Therefore the case stands entirely, so far as we have gone, upon the correctness of my views whether or not I am entitled to hold, and should hold, that the provision for the oath in section 833 was brought forward into the act of 1902.

There is one other question; that is, that the indictment fails to allege that the return was made within the time fixed by statute. I look upon this matter of time as a mere regulation, which, of course, in my judgment, cannot reach the vitals of this case; and therefore I cannot sustain that point.

The judgment on this indictment will be that the indictment is adjudged sufficient, and that the respondent must answer over.

The counsel will submit the proper interlocutory judgment on each indictment, according to this opinion.