**UNITED STATES of America**

v.

**Frederick R. PETTEE.**

**Cr. A. No. 67–10.**

United States District Court
D. Massachusetts.

Sept. 15, 1967.

John Wall, Asst. U. S. Atty., Department of Justice, Boston, Mass., for the Government.

Murray Falk, Moulton, Looney, Mazzone & Falk, Boston, Mass., for defendant.

## MEMORANDUM

MURRAY, District Judge.

This matter came before the court upon defendant's motion to dismiss Counts 2 and 3 of the indictment for failure to charge an offense, and was argued by counsel. The motion was filed the day before trial and was allowed. Because the question presented, so for as the court's research reveals, has never been decided and its resolution requires the interpretation of 18 U.S.C. § 500, this memorandum is filed in support of the order of dismissal.

In Count 1 of this three-count indictment, the defendant was charged with retaining two United States Postal Money Orders with intent to convert them to his own use and gain, knowing them to have been stolen, in violation of 18 U.S.C. § 641. In each of Counts 2 and 3, he was charged with having *issued* one of those same money orders to a named individual "without having

previously paid the full amount * * * payable therefor, with the purpose of fraudulently obtaining and receiving and enabling another person to receive a sum of money from the United States; in violation of 18 U.S.C. § 500."

18 U.S.C. § 500 provides in pertinent part:

"*Whoever issues* any money order or postal note *without having previously received or paid the full amount of money payable therefor,* with the purpose of fraudulently obtaining or receiving, or frauduently enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any officer, employee, or agent thereof, any sum of money whatever; * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis supplied.)

In moving to dismiss Counts 2 and 3, the defendant contends that the statute is "aimed against the dishonest postal employee who issues such a postal order and neither receives nor pays the full amount therefor." From this premise, he argues that "whether or not one who is not a postal employee can ever be prosecuted under this paragraph of section 500, * * * whoever the government chooses to prosecute * * * must be charged with having issued the postal money order having neither received nor paid the full amount payable therefor." Since the indictment in this case charged only that the defendant had not paid for the money order, defendant contends it does not charge an offense. In order to resolve the issue thus presented the history of congressional legislation dealing with money orders must be examined.

To promote public convenience and to insure greater security in the transfer of money through the mail, Congress in 1872 authorized the Postmaster General to establish a uniform money order system. Act of June 8, 1872, ch. 335, § 102, 17 Stat. 297. The statutes governing money orders were codified into positive law as Title XLVI, Chapter 13, of the Revised Statutes, entitled "The Money Order System." The postmaster of every city where post offices were established was authorized "to issue or to cause to be issued, by any of his assistants or clerks in charge of branch post-offices or stations, postal money-orders * * *." Rev.Stat. 4029. The postmaster's bond covered "all moneys received by him or his designated assistants or clerks in charge of stations, from the issue of money-orders * * *." Rev.Stat. 4029, and conversion of the monies or even exchange for other funds was deemed embezzlement. Rev.Stat. 4046. In addition, Rev.Stat. 4030 provided:

"Any postmaster who *issues* a money-order *without having previously received the money therefor* shall be deemed guilty of a misdemeanor, and shall be fined not less than fifty nor more than five hundred dollars." (Emphasis supplied.)

Under the heading "Postal Crimes," Rev.Stat. 5463 made it a crime for any person, with intent to defraud, to forge, counterfeit or alter any order "in imitation of or purporting to be a money-order issued by the Post-Office Department," or any material signature or endorsement thereon; and to knowingly pass or utter any forged, counterfeited, or altered money order. Rev.Stat. 5463 was amended in 1887 to bring postal notes and money orders, etc., of foreign countries within its provisions. Act of January 3, 1887, ch. 13, § 2, 24 Stat. 355.

In 1888, Congress passed a law covering substantially the same ground as Rev.Stat. 5463. In addition, it provided that "any postmaster, assistant postmaster, or clerk employed in any post-office or branch post-office *who shall issue* any money-order or postal-note, *without having previously received or paid the full amount of money payable therefor,* with the purpose of fraudulently obtaining or receiving, or fraudulently enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any officer or agent thereof, the sum of money specified in such money-order or postal-note; * * * shall

upon conviction, be punishable by fine of not more than five thousand dollars, or by imprisonment at hard labor for not less than one year and not more than five years." (Emphasis supplied.) Act of June 18, 1888, ch. 394, § 2, 25 Stat. 187.

The codification of the criminal laws in 1909 combined the amended Rev.Stat. 5463 and the Act of 1888. Act of March 4, 1909, ch. 321, § 218, 35 Stat. 1131. In the consolidation of the two provisions of existing law, the words "any postmaster, assistant postmaster, or clerk employed in any post-office or branch post-office" were deleted, and "whoever" became the subject of the clause defining the offense of issuing a money order "without having previously received or paid the full amount of money payable therefor, * * *." etc. Was it the intent of Congress that as a result of this change a person who was not a postal employee could be prosecuted for putting into circulation a money order?

Throughout the report of the proposed revision and codification of the criminal laws, amendments and new sections were printed in italics while sections which had been redrafted or from which material matter had been omitted or which had been formed by combining two or more different sections or provisions were enclosed in brackets. "The substitution of 'whoever' for 'every person who' [was] made simply to secure uniformity in style and [was] not indicated by italics or brackets." H.R.Rep. No.2, pt. 1, 60th Cong., 1st Sess. 5 (1908); S.Rep.No.10, pt. 1, 60th Cong., 1st Sess. 5 (1908). Under the heading "REPORT IN DETAIL OF PROPOSED CHANGES," the committees of the House and Senate stated with regard to the provision consolidating the Act of 1888 and Rev.Stat. 5463:

"This act embraces two sections kindred in character. In combining these sections it has been necessary to transpose the language and to omit duplications. It has also been enlarged so as to properly cover the subject. It has also been changed so as to permit of both fine and imprisonment." H.R.

Rep.No.2, pt. 1, 60th Cong., 1st Sess. 22 (1908); S.Rep.No.10, pt. 1, 60th Cong., 1st Sess. 22 (1908).

The proposed law, which was enacted without change except for the addition of some commas, was reported as follows:

"Sec. 219 [Whoever, with intent to defraud, shall falsely make, forge, counterfeit, engrave, or print, or cause or procure to be falsely made, forged, counterfeited, engraved, or printed, or shall willingly aid or assist in falsely making, forging, counterfeiting, engraving, or printing, any order in imitation of or purporting to be a money order issued by the Post-Office Department, or by any postmaster or agent *thereof*; or whoever shall forge or counterfeit the signature of any postmaster, assistant postmaster, chief clerk, or clerk, upon or to any money order, or postal note, or blank therefor provided or issued by or under the direction of the Post-Office Department of the United States or of any foreign country and payable in the United States, or any material signature or indorsement thereon, or any material signature to any receipt or certificate of identification thereon; or shall falsely alter, or cause or procure to be falsely altered in any material respect, or knowingly aid or assist in falsely so altering any such money order or postal note; or shall, with intent to defraud, pass, utter, or publish any such forged or altered money order or postal *note, knowing any material signature or indorsement thereon to be false, forged, or counterfeited or any material alteration therein to have been falsely made*; or shall issue any money order or postal note without having previously received or paid the full amount of money payable therefor, with the purpose of fraudulently obtaining or receiving, or fraudulently enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officer, *employee*, or agent thereof *any* sum of money *whatever*; or shall, with intent to defraud the United States, *or*

*any person,* transmit or present to or cause or procure to be transmitted or presented to any officer *or employee* or at any office of the Government of the United States any money order or postal note, knowing the same to contain any forged or counterfeited signature to the same, or to any material indorsement, receipt, or certificate thereon or material alteration therein unlawfully made, or to have been unlawfully issued without previous payment of the amount required to be paid upon such issue, shall be *fined* not more than five thousand dollars or *imprisoned* not more than five years, *or both.*]" S.Rep.No.10, pt. 2, 60th Cong., 1st Sess. 246 (1908).

Examination of the 1909 proposed act reveals that the offense of feloniously issuing a money order was enlarged in that the fraudulent intent no longer had to relate to the face amount of the money order but merely to any sum of money whatever. This and other amendments indicated by the italicized words in the proposed act adequately account for the enlargement of the statute referred to in the reports. In view of this enlargement, it is not likely, in the absence of any definite congressional expression of such intent, that the insertion of "whoever," described in the report as a simple stylistic change, was intended to drastically expand the scope of the statute. No such intent is expressed either in the comments on the proposed bill or in the use of italics in the report of the bill. Moreover, the gravamen of the offense was still the *issuance* of a money order without previous receipt or payment of the amount required upon such issue accompanied by the fraudulent intent. The terms "issued," "issues," and "issue" had always been used throughout the statutes dealing with postal money orders to describe or refer to the sale of a money order by postal employees. Rev.Stat.

4029, 4030, 4032, 4035, 4038, 4039, 4040, 4044, 4047. The terms retained that meaning in the statutes in effect in 1909. Act of May 27, 1908, ch. 206, 35 Stat. 416; Act of March 1, 1899, ch. 327, § 5, 30 Stat. 966; Act of Jan. 27, 1894, ch. 21, §§ 2, 4, 6, 8, 10, 11, 28 Stat. 31–33. That meaning is retained today. 39 U.S.C. §§ 5102, 5103, 5105; 18 U.S.C. § 1713. Furthermore, the phrase "received or paid" was also retained. Only an employee of the postal service is in a position to receive the amount payable for a money order. In fact, Congress retained the provision making it a misdemeanor for a postal employee to issue a money order without having previously received the money payable therefor, in the absence of any fraudulent intent. Act of March 4, 1909, ch. 321, § 210, 35 Stat. 1129. Thus, acts that only a postal service employee could perform were retained as essential elements of the offense.

■ I rule that under the 1909 codification only a postal employee could violate this provision of the criminal laws. The 1948 revision of Title 18 reenacted this statute with changes in phraseology but without any change in substance. House Report No. 304, 80th Congress. No judicial decisions in intervening years had established a different interpretation of the statute. Accordingly, I rule that paragraph five of 18 U.S.C. § 500 applies only to employees of the postal service.[1]

[2] This construction is consistent with the principle that penal statutes should be strictly construed, yet still be given a meaning in harmony with the purpose and intent of the law. The construction does not leave gaps in the congressional scheme of punishing wrongful conduct in the postal money order system. As this case establishes, conduct such as the defendant allegedly engaged in can be punished under 18 U.S.C. § 641.

---

1. United States v. Sahadi, 292 F.2d 565 (2 Cir. 1961), which arose under paragraph six of 18 U.S.C. § 500, adopted sub silentio, a contrary interpretation, but the question was neither raised nor argued in that case (in fact, it appears to have been conceded, p. 566) and the court's attention was directed to another issue.

Moreover, it might well be punishable under any of the first three paragraphs of 18 U.S.C. § 500. See United States v. Di Pietroantonio, 289 F.2d 122 (2 Cir. 1961).