**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lawrence D. DUPEE, Defendant-Appellant.**

No. 77–2585.

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1978.

David K. Crossland, Yakima, Wash., for defendant-appellant.

Robert S. Linnell, Acting U. S. Atty., Yakima, Wash., for plaintiff-appellee.

Before GOODWIN, WALLACE, and HUG, Circuit Judges.

WALLACE, Circuit Judge:

Dupee appeals his conviction by a jury of violating 18 U.S.C. § 500 (issuing a postal money order without receiving full payment) and 18 U.S.C. § 641 (embezzlement of money belonging to the United States). We affirm.

## I.

Dupee was a sergeant in the Army who was assigned as the postal clerk at the Army's Yakima Firing Center at Yakima, Washington. One of his duties was to sell money orders and on May 14, 1976, pursuant to that responsibility, he was issued by the Postal Service 500 blank, consecutively numbered money orders. He had previously been issued a validation plate (a numbered metal tab) which, when inserted in the money order issuing machine, imprints a serial number on each money order.

A money order consists of three sheets of paper, an original and two carbon copies. The white carbon copy is called a voucher and is to be kept by the postal clerk issuing the money order. The vouchers are normally remitted by the issuing postal worker to Postal Service officials, and the cash received from money order purchases is deposited in the Service's account in a specified bank. By comparing the total amount of money recorded on the vouchers with the cash deposited, and by keeping track of the consecutive numbers of the blank money orders issued to postal workers, the Postal Service verifies that money has been received for all money orders issued to customers. The validation plate serial number, which is imprinted on each money order as it is issued to the customer, is used to determine which postal worker issued any given money order.

The government claims that Dupee violated section 500 [1] by issuing to himself five money orders, at least two of which he deposited in his checking account in a local bank, without paying for them. It is also alleged that Dupee violated section 641 [2] by issuing over 150 money orders to customers at the Yakima Firing Center postal station and keeping the money paid by them rather than depositing it in the Postal Service's account.

The government's case consists of evidence that Dupee had deposited into his checking account two of five money orders made out to himself which were from among those blanks issued to him. The deposit totaled $600. Neither the cash nor the vouchers were remitted to the Postal Service for any of the five money orders.

---

1. 18 U.S.C. § 500 provides in part:
   Whoever issues any money order or postal note without having previously received or paid the full amount of money payable therefor, with the purpose of fraudulently obtaining or receiving, or fraudulently enabling any other person, either directly or indirectly, to obtain or receive from the United States or Postal Service, or any officer, employee, or agent thereof, any sum of money whatever . . . [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 641 provides in part:
   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

   Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The government also produced evidence that neither cash nor vouchers had been remitted for over 150 other money orders issued to Dupee in blank and bearing the serial number of his validation plate. The originals of these money orders, representing over $12,500, were eventually cashed or deposited by the purchasers or their payees, and they were all ultimately paid for by the Postal Service. Two of the original purchasers of six of these money orders testified that they paid Dupee cash for them.

## II.

Dupee first contends that he must be acquitted of the section 500 violation on the authority of *United States v. Pettee*, 273 F.Supp. 1011 (D.Mass.1967). That case held that since only postal employees can issue and collect payment for money orders, one not a postal employee who came into possession of stolen money orders could not be guilty of having issued them without receiving full payment. Since during the relevant period Dupee was not a postal employee, but merely a member of the Army assigned to work in the postal station, he argues that under the reasoning of *Pettee* he cannot be guilty of the section 500 offense.

■ This argument fails for two reasons. First, section 500 does not, on its face, apply only to postal employees, but to "whoever" does the proscribed act. Second, even if the *Pettee* court were correct in its assertion that Congress did not intend to make the offense applicable to non-postal employees when in 1909 it substituted "whoever" for "any postmaster, assistant postmaster, or clerk employed in any post-office or branch post-office," *id.* at 1013, Dupee still falls squarely within the class of those capable of committing the crime. Although he was not on the Postal Service payroll, he was

accountable to the Postal Service for his responsibilities in the postal station. *Pettee* is based on the premise that "[o]nly an employee of the postal service is in a position to receive the amount payable for a money order." *Id.* at 1014. Since Dupee, under Postal Service authority, was in such a position, he was clearly an "employee" within the meaning that *Pettee* ascribes to the statute.

Thus, acquittal of the section 500 violation was not required, and Dupee's proposed instruction number eight, which incorporated his theory of *Pettee,* was properly refused by the district judge.

Dupee next argues that it was error for the trial judge to admit into evidence the originals of 151 money orders shown by their numbers to be from among those issued in blank to Dupee and issued with his validation plate number to various customers at the postal station. Dupee argues that the government should be required to prove that he actually received cash from the persons to whom these money orders were issued.

■ This argument is without merit. As noted above, the government did produce the purchasers of six of Dupee's unaccounted-for money orders who testified that they paid Dupee for them in cash. The government's failure to produce the individual purchasers of the remaining 151 money orders goes to those documents' weight as evidence, not to their admissibility. They were obviously relevant circumstantial evidence of the government's claim that Dupee had sold them for cash and kept the proceeds for himself. Since Dupee has failed to show any reason for their exclusion,[3] they were properly admitted under Rule 402, Fed.R.Evid.[4]

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

**3.** Although Dupee frames his objection to this evidence in terms of the lack of a "proper foundation," we do not understand him to argue on appeal that the money orders were not authentic, but merely that it had not been proved that he had actually received cash for them.

**4.** Rule 402, Fed.R.Evid. provides:

Dupee also contends that if he failed to turn over money received for money orders, no embezzlement occurred, but instead a debtor-creditor relationship was established. We disagree. This is a classic case of embezzlement—the fraudulent conversion of the property of another by one who is lawfully in possession of it. *See Woxberg v. United States,* 329 F.2d 284, 290 (9th Cir.), *cert. denied,* 379 U.S. 823, 85 S.Ct. 45, 13 L.Ed.2d 33 (1964); *United States v. Powell,* 294 F.Supp. 1353 (E.D.Va.1968), *aff'd,* 413 F.2d 1037 (4th Cir. 1969) (postal employee properly convicted of embezzlement upon his failure to explain shortage in funds).

The cases cited by Dupee are clearly distinguishable. In *United States v. Collins,* 464 F.2d 1163 (9th Cir. 1972), we merely decided that it was not federal-government property that had been wrongfully taken when the defendants deposited in their account a warrant based on federal funds but drawn by a San Francisco city official, then drew checks on the account. Here, on the contrary, the money received by Dupee was clearly Postal Service property.

In *United States v. Johnston,* 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925 (1925), the Supreme Court held that the failure of one collecting admission fees at a boxing match to pay federal taxes on his receipts did not constitute embezzlement because all of the money initially received was the property of the match promoter. The promoter simply became the government's debtor for the amount of the tax liability. Here, however, as Dupee received funds in exchange for money orders these funds immediately became government property. Similarly, in *United States v. Mason,* 177 F. 552 (C.C.D. Mass.), *aff'd,* 218 U.S. 517, 31 S.Ct. 28, 54 L.Ed. 1133 (1910), it was not embezzlement for a court clerk to retain court fees he had received because, under prevailing law, he was entitled to use those funds for personal compensation and office expenses and to remit the government's portion semiannually. Again, the Court pointed out that those funds ultimately owed to the government made the clerk a debtor as opposed to trustee, *id.* at 531, thus signifying that the fees became the property of the clerk rather than the government when initially received. Thus, in both these cases the property simply did not belong to one other than the defendant and therefore could not have been embezzled by him. All money received by Dupee for money orders, however, was exclusively the property of the Postal Service, and any conversion of those funds by him falls squarely within the prohibition of section 641.

In light of these conclusions, and upon a thorough review of the record, Dupee's final argument that the evidence is not sufficient to support the verdict must be rejected. There was more than ample relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Rojas,* 554 F.2d 938 (9th Cir. 1977); *United States v. Nelson,* 419 F.2d 1237 (9th Cir. 1969).

AFFIRMED.