**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

JAMES EARL MAGEE,

        Defendant - Appellant.

No. 23-1280

D.C. No.
2:21-cr-00171-GMN-VCF -1

MEMORANDUM*

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted August 13, 2024
San Francisco, California

Before: GRABER, CALLAHAN, and KOH, Circuit Judges.

James Magee appeals his conviction, following a jury trial, for one count of

theft of government money or property in violation of 18 U.S.C. § 641 and one

count of mail theft by a postal employee in violation of 18 U.S.C. § 1709.  We

have jurisdiction under 28 U.S.C § 1291.  We affirm in all respects except that we

vacate the standard conditions of supervised release and remand for further

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

proceedings as described in *United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023) (en banc).

1.     Magee argues that the district court should have granted a mistrial because of the government's alleged *Brady* violation and outrageous conduct. However, even assuming that the government withheld favorable evidence from Magee, no prejudice ensued because there was not "a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

The evidence at trial established that Magee sold a customer the three money orders at issue, that Magee's unique employee identification number was listed on at least one of the receipts cashing the money orders, that Magee was at his workstation around the time the money orders were cashed (as evidenced by surveillance footage), and that no one else was at Magee's workstation when the money orders were cashed.  Moreover, the customer who purchased the three money orders at issue identified Magee in court, funds were deposited into Magee's bank account a few days after the three money orders at issue were cashed, and Magee thereafter paid an overdue car bill after having not paid that bill for four months.  Other evidence also established that Magee had sold and cashed $1 money orders addressed to someone else shortly before the three money orders at issue were cashed, that Magee's handwriting and driver's license number were

associated with these $1 money orders, that a stub from one of these $1 money orders was recovered from Magee's car, and that Magee asked a supervisor about how to cash money orders around the same time (which the supervisor considered odd).

In light of this evidence, the fact that Ms. Elsas gave her driver's license to a clerk other than Magee—a fact that the government never contested—did not give rise to a "second suspect" such that Magee was deprived of a fair trial. *United States v. Jernigan*, 492 F.3d 1050, 1056–57 (9th Cir. 2007) (en banc). Because any withheld evidence could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *Strickler*, 527 U.S. at 290 (citation and internal quotation marks omitted), we reject Magee's contention that a new trial is warranted.

2. Magee raises five evidentiary challenges, each of which fails.

First, the district court correctly determined that evidence of Magee negotiating $1 money orders using another person's identity was "inextricably intertwined" with the charged offenses. *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018). The evidence allowed the prosecutor to offer a "coherent and comprehensive story" regarding Magee's commission of the crime, *id.* (citation omitted), as it established how Magee tested the viability of cashing money orders addressed to someone else. But even if the evidence was "other act evidence"

3

within the meaning of Federal Rule of Evidence 404(b), the district court did not abuse its discretion in admitting it. *See United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019) ("We review de novo whether evidence is other act evidence within the meaning of Fed. R. Evid. 404(b), but the admission of this evidence for abuse of discretion."). The evidence helped to show that Magee had the opportunity and knowledge to cash another person's money orders and that he prepared to do so. *See* Fed. R. Evid. 404(b)(2). The evidence also met the Ninth Circuit's four-part test for admissibility under Rule 404(b), as it helped prove a "material point" at trial by showing that Magee used another person's identity to execute the crime, it occurred around the same time as the charged offenses, and it was "similar to the offense[s] charged" because it illustrated Magee's knowledge of bypassing Postal Service protocols for cashing money orders addressed to someone else. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). There was also sufficient evidence to show that Magee, in fact, negotiated the $1 money orders.

Second, the district court did not abuse its discretion in admitting surveillance footage taken from the post office. Witness testimony established that the date on the footage was accurate and that the timestamp on the footage "is always off by a few minutes." Contrary to Magee's argument that the government failed to establish the accuracy of the footage timestamps, the government

4

established that the footage had timestamps "at or near the time that the transaction was conducted," which is what the rules of evidence require. Fed. R. Evid. 901(b)(1).

Third, the district court did not abuse its discretion by admitting the lay witness handwriting testimony of Magee's ex-fiancée, Ms. Sanders-Castro. Sanders-Castro confirmed that she had seen Magee's handwriting "a few times," was "vaguely familiar" with it, and recognized it on the $1 money orders.[1] Although her familiarity with Magee's handwriting was admittedly limited, it was still helpful to the jury. *See* 29 Wright & Miller, Federal Practice & Procedure § 6252 (2024) (explaining that Rule of Evidence 701 generally allows testimony that would be helpful to the jury, as long as the benefits of admission outweigh the detriments). We also find it relevant that Magee's counsel conceded at trial that Sanders-Castro "could testify, because she's familiar with [Magee's] handwriting."

Further, even if the district court abused its discretion in admitting Agent Williams' lay witness handwriting testimony, any error was harmless. Sanders-Castro testified that she recognized Magee's signature on the $1 money orders, Agent Williams found a stub for one of the $1 money orders in Magee's car,

---

[1] The parties dispute whether plain error review applies to the admission of Sanders-Castro's testimony. However, because there was no abuse of discretion, it follows that there was no plain error. *United States v. Autery*, 555 F.3d 864, 873 (9th Cir. 2009).

Magee's driver's license was listed on the $1 money order, and the Postal Service records showed Magee selling the $1 money order around the same time he sold the other money orders at issue. Admission of Agent Williams' handwriting testimony, if erroneous, thus did not "more likely than not affect[] the verdict" given this other evidence tending to link Magee to the $1 money orders. *United States v. Koziol*, 993 F.3d 1160, 1183 (9th Cir. 2021) (quoting *United States v. Obendorf*, 894 F.3d 1094, 1098 (9th Cir. 2018)).

Fourth, the district court did not abuse its discretion in admitting Exhibit 14, which included photocopied receipts from the July 2 and July 6 money order transactions. The photocopied receipts satisfied the best evidence rule because they were duplicates of the original receipts. *See* Fed. R. Evid. 1002, 1003. Magee argues that the July 6 receipt could not be considered a duplicate because the bottom of the receipt was cut off in the photocopy machine, but the district court properly considered "the appearance" of the July 6 receipt and the "reliability of the copying process" to conclude that the missing information did not affect the evidence's reliability. *See* 31 Wright & Miller, Federal Practice & Procedure § 7167 (2024) ("In determining whether the copy is an accurate reproduction, the court may consider, among other evidence, the appearance of the very item in question, including the reliability of the copying process that appears to have been employed."). Magee's argument that Exhibit 14 violated the rule of completeness

also fails because there is no "other part" of the two receipts that the government could have introduced given that the government no longer had copies of the original receipts. *See* Fed. R. Evid. 106. Finally, even if the district court abused its discretion by admitting the incomplete July 6 receipt, any such error was harmless given the other evidence in the record supporting Magee's conviction.

Fifth, the district court did not abuse its discretion in declining to force admission of Magee's pretrial recorded statement. Magee argues that the government conditionally agreed to admit his recorded statement with certain redactions, but he overstates the record. Although we hold the government strictly to its pre-trial agreements, *United States v. Shapiro*, 879 F.2d 468, 469–71 (9th Cir. 1989), no binding agreement between the parties was reached here. The government wrote by email to defense counsel that "to the extent the parties would agree to redact the recording" it would "consider stipulating to the admission of certain clips." Considering to do something is not agreeing to actually do something. Further, the government's email ended by stating that it was "not committing to this option at this time, but we can discuss further, and that might be a reasonable compromise."

3. Magee next argues that there was insufficient evidence to support his conviction. To begin, he contends that he did not steal property of the United States, which is required for a conviction under 18 U.S.C. § 641. Magee

7

acknowledges that our precedent holds otherwise, *United States v. Dupee*, 569 F.2d 1061 (9th Cir. 1978), but contends *Dupee* was "effectively overruled" by the Supreme Court in *Delaware v. New York*, 507 U.S. 490 (1993), and *Delaware v. Pennsylvania*, 598 U.S. 115 (2023). However, neither *New York* nor *Pennsylvania* considered money orders that were stolen or that required the issuer—here, the Postal Service—to reimburse the stolen money orders. As a result of Magee's conduct, the Postal Service was required to reimburse the stolen $2,340.27, which most certainly constitutes a "thing of value of the United States" under § 641. *See United States v. Miller*, 520 F.2d 1208, 1210 (9th Cir. 1975) (finding a violation under § 641 where money was "drawn on the account of the United States"). So even if the debtor-creditor relationship articulated in *New York* and *Pennsylvania* exists, the reasoning in those cases is not "clearly irreconcilable" with *Dupee*. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

Magee also argues that insufficient evidence established his identity as the person who both unlawfully stole and cashed the money orders at issue. But as we have already noted, the customer who purchased the stolen money orders identified Magee at trial, the surveillance footage showed Magee selling the money orders to the customer, and at least one of the receipts from cashing the money orders showed Magee's unique employee identification number. The evidence at trial also established that just a few days after cashing the money orders Magee

8

deposited money into his bank account and paid an overdue bill, a stub from one of the $1 money orders was recovered from Magee's car, the $1 money orders were associated with Magee's handwriting and driver's license number, and Magee had asked a supervisor about cashing money orders around the same time that the three money orders at issue were cashed. "[V]iewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009) (quoting *United States v. Dearing*, 504 F.3d 897, 900 (9th Cir. 2007)).

4. Finally, in view of the parties' stipulation, we vacate the imposition of the "standard conditions" of Magee's supervised release and we remand for the limited purpose of allowing the district court to impose these conditions, if it so chooses, in a manner consistent with *Montoya*, 82 F.4th at 651 ("The district court can recite each condition it elects to impose. Alternatively, where the defendant has been informed of the proposed conditions of supervised release in advance of sentencing, the court can incorporate those conditions by reference at the hearing.").

Accordingly, we **AFFIRM** Magee's conviction and sentence except that we **VACATE** the standard conditions of supervised release, and **REMAND**.