Earl Edward THOMPSON, Appellant,

v.

David SCURR, Warden, Iowa State Penitentiary, Appellee.

No. 81–1541.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Jan. 25, 1982.

As Amended on Denial of Rehearing and Rehearing En Banc March 2, 1982.

Barbara A. Schwartz, Ronald J. Allen (argued), Helen Lucier, Mary Schlicher, Student Legal Interns, Iowa City, Iowa, for appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Thomas D. McGrane (argued), Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

ARNOLD, Circuit Judge.

Earl Edward Thompson was convicted of first-degree murder in 1961 after a plea of guilty in the District Court of Dallas County, Iowa. There was no appeal. In 1965 Thompson filed a petition for writ of habeas corpus in the Iowa state courts. This petition and four subsequent state-court petitions filed between 1965 and 1976 were denied. Thompson then filed a petition for habeas corpus in the United States District Court for the Southern District of Iowa. In 1979, after appointment of counsel, the case was referred to a United States Magistrate pursuant to 28 U.S.C. § 636(b)(1). An evidentiary hearing was held, and the magistrate filed a report and recommended that the District Court grant the writ. The District Court[1] rejected the magistrate's report and denied the writ. This appeal followed.

Thompson claims that he is being held in violation of the Constitution for four reasons: (1) because he was denied effective assistance of counsel at and before his degree-of-guilt hearing; (2) because his plea of guilty was neither voluntarily nor intelligently made; (3) because the Iowa law on the defense of intoxication in effect at the time of his conviction was unconstitutional in that it required him to prove by a preponderance of the evidence that he was so far intoxicated as to be incapable of forming the specific intent to commit first-degree murder; and (4) because the trial court's bias and predisposition to find him guilty of first-degree murder deprived him of liberty without due process of law. Thompson also argues for reversal that the District Court erroneously made findings of fact and rejected the magistrate's recommendations without making an independent review of the record as required by statute. We affirm for reasons set out below.

## I.

Petitioner Thompson was arrested at approximately 10 p. m. on January 31, 1961, in Polk County, Iowa, as a suspect in the robbery of a service station. At the time of his arrest Thompson tried to escape in the stolen automobile he was driving but was subdued by police officers. He was taken to the service station he robbed and was identified by one of the station attendants. Thompson was then taken to the Polk County Jail. Some time later in the night officers came to his cell and asked him if he knew anything about Joe Dickson, Jr., a 16-year-old boy who was missing. Thompson said that he did not.[2] Dickson was the owner of the car Thompson was driving when arrested. Thompson awoke around 6:00 a. m. and was given breakfast. He was then taken to an assembly room for questioning and admitted robbing the service station. He was also questioned again about the missing boy. Thompson became agitated at this and said that he would take the police to the place where he and the boy

* The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Hon. William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

2. At the hearing before the magistrate Thompson testified that he was beaten by police during this visit to his cell. The District Court, however, doubted that this incident ever took place because it found that petitioner's counsel was not informed of the incident, and that petitioner testified in the state court about being hit in the head with a flashlight at the time of his arrest but not as to any other incidents of police misconduct. The District Court thought it unlikely that Thompson would testify to one incident of police misconduct but not to another if it had indeed occurred. This finding is supported in the record and not clearly erroneous.

had had a fight. In the next several hours police officers in two patrol cars, accompanied by Thompson and following his general directions, were able to retrace Thompson's course of the previous night from the Van Ginkle Bowling Alley, where he stole the car and picked up Joe Dickson, Jr., to the spot in rural Dallas County where the body of Joe Dickson, Jr., was found.

Thompson was returned to the Des Moines Police Department, where he gave a detailed statement of his version of his activities of the previous evening, including the robberies and the shooting incident involving decedent. The resulting signed confession, which was introduced at trial, was but one of three that Thompson gave during the next week. From all indications given to counsel the statements were freely and voluntarily given. In 1961, of course, requirements as to the giving of warnings to persons in custody had not yet been imposed.

On February 3, 1961, Thompson appeared without counsel at a preliminary hearing on an open charge of murder [3] and pleaded not guilty by reason of temporary insanity. On February 10, 1961, the Dallas County Court appointed counsel, Donald J. Shirley, for Thompson. At the arraignment on February 17, Thompson again pleaded not guilty and a trial date of March 20, 1961, was set. On the day Thompson's trial was to begin he withdrew his plea of not guilty and entered a plea of guilty to an open charge of murder. See Iowa Code § 690.1 (1958) (repealed). A degree-of-guilt hearing was held on March 21 and 22, which resulted in a judgment of guilty of first-degree murder and a sentence of life imprisonment. Thompson did not appeal.

## II.

We have reviewed the entire record in this case and have concluded that most of petitioner's arguments can be rejected on the basis of the opinion of the District Court.[4] Though we agree with the result reached by the District Court, there are several arguments which we choose to discuss further, either because they were not discussed by the District Court or because our reasoning differs somewhat from that employed by the District Court.

■ 1. As a part of petitioner's argument that he was provided with ineffective assistance of counsel at the degree-of-guilt hearing he points to counsel's failure to object to the admission of his confession. This so-called "failure" is amply explained by the District Court's finding that counsel was never given any indication that the confession was anything but freely and voluntarily given. Thus, there was no reason to believe that a motion to suppress had any chance of success. Moreover, suppression of the confession might have had little practical effect, because there was considerable independent evidence of Thompson's guilt,[5] and his plea of guilty to the open charge of murder removed any question as to whether he did the physical act of killing decedent. A reading of the trial transcript yields yet another possible reason why there was no objection to the admission of the confession into evidence. The confession, once in evidence, was used by counsel to bolster the credibility of Thompson's testimony at the degree-of-guilt hearing.

From the morning after Thompson's arrest his explanation of the shooting incident

---

3. Thompson was prosecuted under §§ 690.1, 690.2, and 690.3 (1958) of the Iowa Code as it was then in force (now repealed). This particular statutory scheme provided for only one crime called murder—the killing of "any human being with malice aforethought, either express or implied . . . ." *State v. Nutter*, 248 Iowa 772, 774, 81 N.W.2d 20, 21 (1957). The degrees of murder, first and second, were not considered distinct offenses, but only gradations of the crime for the purpose of varied punishment according to the particular circumstances. *Ibid.*

4. The opinion of the District Court is, as yet, unpublished. See *Thompson v. Brewer*, Civil No. 76–277–1, (S.D.Iowa April 10, 1981).

5. Thompson was arrested while driving decedent's automobile, which contained decedent's jacket, wallet, and shoes. Also in the car was Thompson's gun, which was used in the killing. At trial there was testimony matching a bullet found in the corpse to Thompson's pistol. Decedent was shot twice, and at the time of Thompson's arrest his pistol was fully loaded except for two empty cartridges.

was that he never meant to hurt the decedent. According to Thompson he intended only to lock him in the trunk of the car, but while attempting to open the trunk he was "rushed" by the decedent, and he shot him in self-defense. This was also the substance of Thompson's three signed statements given to police.

At the degree-of-guilt hearing, in an attempt to persuade the court to find murder in the second degree, Thompson's counsel argued, *inter alia*, that the alleged crime was not felony murder because the theft of the auto was complete at the time of the killing, and that there was no showing of specific intent to kill or premeditation. For the court to accept the second half of this argument it was crucial that it believe Thompson's account of the events leading up to the crime. With the confession in evidence counsel was able to make the following argument:

> The defendant here took the stand voluntarily and told his story of what happened. He apparently has told it on three or four prior occasions. He told the story the same way on each occasion, and he told it the same way at this time on this witness stand and before this Court.

Tr. of Degree of Guilt Hearing p. 281.

> We submit that the fact he told the same story on at least four occasions, one of which was in this courtroom today, about what actually happened behind the car of Joe Dickson, Jr., when the shooting occurred without any contradiction, without any variation, and without any hesitation on his part ...

*Id.* at 284.

> We submit further that the testimony given by the defendant on the witness stand was clear, without hesitation, and agreed in every detail with that which he gave to the Police Department the day after he was arrested.

*Id.* at 285. Thus it is clear from the record that counsel attempted to use the confes-

sion to bolster the credibility of his client's testimony. This may well have been Thompson's best defense, in counsel's judgment. It bears mention here that the above portions of counsel's argument, and for that matter a full reading of the hearing transcript, reveal anything but the work of incompetent counsel. We are convinced that Mr. Shirley demonstrated more than considerable skill and judgment.

■ 2. Petitioner also argues that counsel was ineffective because he improperly advised him as to whether he should take the stand to testify. Assuming for the sake of argument that counsel failed to discuss with Thompson the full implications of this decision, it is inconceivable that there was any resulting prejudice to his case.[6] As we have noted Thompson was not in a strong position at the degree-of-guilt hearing, as the evidence of his guilt was considerable. Taking the stand to tell his version of the events leading up to the killing may have been his best chance at second-degree murder and a lesser penalty. To argue now that he should not have taken the stand is simply to second-guess a judgment of counsel that was reasonable when made.

■ 3. Petitioner next argues that counsel was ineffective because he failed to object to the trial court's use of an incorrect standard for the felony-murder charge. It is said that the trial court failed to make a separate finding of malice when applying the felony-murder rule, as required by Iowa law. See *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979); *State v. Campbell*, 217 Iowa 848, 251 N.W. 717 (1933). In our reading of the record, however, we can find no indication that the court misapplied the law or that petitioner's counsel misunderstood the law.

*State v. Galloway, supra,* reveals a distinction between the Iowa law of felony murder and the rule at common law. At common law malice was imputed when a mere killing occurred in the perpetration of

**6.** In attempting to prove ineffective assistance of counsel one must show that counsel exercised less than "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances" and "that his lawyer's ineffectiveness prejudiced him." *Ford v. Parratt*, 638 F.2d 1115, 1117 (8th Cir. 1981).

a specific crime. But under Iowa Code § 690.2 (1958) (repealed), a killing committed in the perpetration of a felony (here, robbery) is first-degree murder only if the killing itself is a murder, that is, committed with malice. The trial court did not misapprehend this point.

The court stated that it need not rely on any presumptions of premeditation or malice. Tr. of Degree of Guilt Hearing p. 294. The court also made a specific finding that "a murder was committed on the night of January 31, 1961." *Id.* at 293. Implicit in this conclusion is a finding of malice aforethought. The court then went on to determine that the degree of the murder was first degree because the murder was committed while "defendant was in the process of committing a robbery." *Id.* at 294. We can find no fault with this application of Iowa law and, thus, no inadequacy of counsel for failure to object.

■ 4. Another of petitioner's arguments for reversal is that the Iowa law on the defense of intoxication in effect at the time of his conviction was unconstitutional because it required him to prove by a preponderance of the evidence that he was so far intoxicated as to be incapable of forming the requisite criminal intent to commit the crime of first-degree murder. This argument was recently rejected by this Court in *Long v. Brewer*, 667 F.2d 742 (8th Cir. 1982), a case involving the same rule of Iowa law, and by the Third Circuit in *United States ex rel. Goddard v. Vaughn*, 614 F.2d 929 (3d Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980).

■ 5. The District Court referred petitioner's case to the United States Magistrate, pursuant to 28 U.S.C. § 636(b)(1)(B), and an evidentiary hearing was held. The magistrate prepared a 21-page summary of the testimony of the two witnesses, petitioner and his trial counsel, Mr. Shirley. It has been called to our attention that the District Court relied on this summary of the testimony (to which neither side objected) in making its decision rather

than reviewing verbatim the transcript of the evidentiary hearing.[7] Petitioner now argues that the review by the District Court was inadequate because the trial judge did not have the transcript of the hearing before the magistrate.

Where, as here, there are contested issues of fact, a complete transcript should be before the district court when it makes its *de novo* review of the magistrate's proposed findings and recommendations, unless otherwise stipulated by the parties. *United States v. Lewis*, 621 F.2d 1382, 1387 (5th Cir. 1980). Ordinarily we would remand to the District Court for a *de novo* determination that complied with the statute. We need not do so here, however. The complete record is before us, and we have reviewed it in its entirety. Therefore, we can make our own findings without remand. See *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir. 1980); *Swanson v. Levy*, 509 F.2d 859 (9th Cir. 1975). A full reading of the record compels us to agree with the District Court's rejection of the magistrate's report.

Affirmed.

---

7. It appears that the transcript of the evidentiary hearing was not prepared until June 16, 1981, some two months after the filing of the District Court's decision.