**UNITED STATES of America, Appellee,**

v.

**Juan Manuel TOVAR, Appellant.**

**No. 82–1166.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1982.

Decided Sept. 1, 1982.

---

James M. Rosenbaum, U. S. Atty., John M. Lee, First Asst. U. S. Atty., D. Minn., Minneapolis, Minn., David Soucy, Legal Intern, for appellee.

Robert A. Brunig, O'Connor & Hannan, Minneapolis, Minn., for appellant.

Before BRIGHT and HENLEY,* Circuit Judges, and BARTLETT,** District Judge.

PER CURIAM.

Juan Manuel Tovar appeals from his conviction for stealing postal money orders in violation of 18 U.S.C. Sec. 641 and transmitting unlawfully issued money orders in violation of 18 U.S.C. Sec. 500.

Tovar alleges several errors in the admission or suppression of evidence and also contends that 18 U.S.C. Sec. 500 was not violated because there was no illegality on the part of postal employees. We affirm for the reasons explained below.

On January 7, 1980, a white male went to the Upper Nicollet postal station in Minneapolis, Minnesota, and ordered ten $300 money orders. The postal clerk filled them out and laid them on the counter. The thief grabbed them and ran out the door. Six of the money orders were cashed in Kansas City, Missouri, the next day. They were endorsed "Michael A. Guerra" and bore Tovar's fingerprints. The other four money orders were cashed in Oklahoma City, Oklahoma, the second day after the robbery.

* The Honorable J. Smith Henley became a Senior United States Circuit Judge on June 1, 1982.

** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri, sitting by designation.

1. *Exculpatory Statements*

Tovar's first contention is that the District Court [1] should have allowed the introduction of an exculpatory statement made by Deck Brewer under the statement against penal interest exception to the hearsay rule (Federal Rule of Evidence 804(b)(3)) and also under the exception for other trustworthy statements of out of court declarants (Federal Rule of Evidence 804(b)(5)).

Tovar's attorney as well as an investigator interviewed Brewer after Brewer had been convicted of an unrelated crime. Brewer stated that a friend, Marny Parsons, had obtained the money orders from a "white trick." Brewer and Parsons then traveled to Brownsville, Texas, where they met Tovar, gave him the money orders and some cash, and asked him to procure marijuana for them. Tovar was unable to buy marijuana and gave the money orders and cash back to Brewer. Brewer was called as a witness at Tovar's trial but invoked his privilege against self-incrimination when questioned about his statements. The Court refused to admit in evidence Brewer's statements made to Tovar's attorney and the investigator.

Tovar argues first that Brewer's statements were admissible under Rule 804(b)(3) which provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 * * * * * *

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or propriety interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be

1. The Honorable Robert G. Renner, United States District Court for the District of Minnesota.

true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Three elements must be satisfied before exculpatory statements qualify as statements against penal interest under Rule 804(b)(3): (1) the declarant must be unavailable as a witness; (2) the statement must be one which so far tended to subject the declarant to criminal liability that a reasonable person in his position would not have made it unless he believed it to be true; and (3) there must be corroborating circumstances that clearly indicate the trustworthiness of the statement.

It is undisputed that Brewer was unavailable to testify as a witness. The District Court refused to admit these statements because the Court concluded that Brewer did not believe that the statements were against his penal interest and that corroborating circumstances did not clearly indicate the trustworthiness of the statements.

In determining whether a declarant's statement is against his penal interest we look at the practical significance of the declarant's statements in light of all the circumstances. *Witham v. Mabry*, 596 F.2d 293, 297 (8th Cir. 1979). The underlying policy of the statement against penal interest exception of Rule 804(b)(3) "rests on the assumption that persons will not make damaging statements against themselves unless they are true. As a psychological generalization, this conclusion rings true; in the individual case, the diversity of the human personality makes generalizations suspect." 4 J. Weinstein & M. Berger, *Weinstein's Evidence*, para. 804(b)(3)(01).

The circumstances surrounding Brewer's statements are important because "a particular statement which is ostensibly disserving may in fact be either neutral or self-serving." *United States v. Riley*, 657 F.2d 1377, 1384 (8th Cir. 1981). When the oral and unsworn statements were made to Tovar's attorney and the investigator Brewer had already pleaded guilty to the robbery of the Lowry Hill Postal Station in Minneapo-

lis. The statements were made both before and after he was sentenced to prison. Brewer did not admit stealing the money orders or even that he knew they were stolen. *United States v. Love*, 592 F.2d 1022, 1026 (8th Cir. 1979).

Furthermore, when questioned out of the presence of the jury, Brewer stated that:

Q. Have you ever stated that you felt responsible because you knew that Tovar was innocent of any wrongdoing in connection with the charges on which he is before the Court?

A. Well, I feel responsible for a lot of things that have happened in Minnesota since I came here. I came here and I was running from the policemen in another state for a crime, and I have been running for six or seven months. I was a bit insane, and it seemed like everybody I came in contact with over here, good people, come to court and families have been embarrassed and everything, so I feel responsible for a lot of people, truthfully. I know a lot of things have happened over here that is basically my fault. If there was some way that all of the responsibility could be put on me and everybody would be free of embarrassment, I wish I could receive that and be done with it.

Based on these circumstances we agree with the District Court that Brewer, or a reasonable man in his position, might well have made these statements without believing them to be true. Brewer knew that he was going to prison and wished to help out a friend for whom he felt responsible.

Even if we assume that Brewer's statements were against his penal interest, the District Court did not err in concluding that Brewer's statements were not corroborated by circumstances clearly indicating their trustworthiness. The only corroboration for Brewer's statements that he had taken the money orders to Brownsville, Texas, was supplied by Tovar's trial testimony. Tovar testified that Brewer had come to Brownsville, Texas, in January of 1980, and that Tovar attempted unsuccessfully to buy marijuana for Brewer with the cash and money orders Brewer provided.

Tovar's testimony corroborating Brewer's statements is suspect and is outweighed by the incredible scenario suggested by Brewer. The money orders were stolen on January 7, 1980, and six of them, later found to bear Tovar's fingerprints, were negotiated in Kansas City, Missouri, the following day. The other four were cashed in Oklahoma City, Oklahoma, on the second day following the robbery. Thus, for Brewer's statements to have been true the following sequence of events would have had to occur between the time the money orders were stolen in Minneapolis and two days later when four money orders were cashed in Oklahoma City. Parsons received $1,800 in stolen money orders from a "white trick." She and Brewer traveled from Minneapolis to Brownsville, Texas, on the Mexican border where they met Tovar. Tovar took the money orders and some cash and tried unsuccessfully to purchase marijuana (thus explaining Tovar's fingerprints on the money orders). Then Brewer and Parsons backtracked to Kansas City and negotiated several of the money orders. Thereafter, they turned around and went southwest again, to Oklahoma City, where on the following day they cashed the rest of the stolen money orders.

Brewer did not suggest either the means of travel or the motive for this unlikely odyssey. While this itinerary might not be impossible, it is so remarkable that we cannot conclude that the District Court erred in determining that Brewer's statements were not corroborated by circumstances clearly indicating that they were trustworthy.

Tovar also urges that Brewer's statements should have been admitted under the "other exceptions" provision of Federal Rule of Evidence 804(b)(5). The same reasons which cause us to conclude that Brewer's statements were not admissible under Rule 804(b)(3) require us to reject Tovar's Rule 804(b)(5) contention. "There is a lack of surrounding circumstances which are indicative of a strong propensity for truthfulness which are present in the traditional hearsay exceptions." *United States v. Love*, 592 F.2d 1022, 1027 (8th Cir. 1979).

## 2. Handwriting Exemplars

■ Tovar next contends that the handwriting exemplars obtained from him should have been suppressed. Tovar was arrested by state officials in Louisiana in late 1981 on charges unrelated to this action. While Tovar was in state custody the Louisiana authorities learned from the National Crime Information Center that a warrant had been issued for Tovar's arrest in the District of Minnesota. Tovar was released to federal custody in Louisiana. An attorney was appointed to represent him in the removal proceedings that resulted in his transfer to Minnesota. Shortly after his arrival in Minnesota two postal inspectors visited Tovar in jail, read him his *Miranda* rights and asked him to sign a card waiving them. Tovar refused to sign the waiver, but did continue to talk with the postal inspectors and furnished the handwriting exemplars at issue here.

Tovar filed a motion to suppress the exemplars. Because no evidence was presented at the suppression hearing on the validity of Tovar's arrest in Louisiana, the magistrate assumed for the purposes of the suppression motion that Tovar's arrest in Louisiana was without probable cause. Tovar's motion to suppress the handwriting exemplars was denied by the magistrate in a report and recommendation that was adopted by the District Court.

Tovar argues on appeal, as he did in the motion to suppress, that the handwriting exemplars should be suppressed because they are the fruit of an illegal arrest. Tovar relies on *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

In *Brown* the Supreme Court concluded that advising Brown of his *Miranda* rights after an illegal arrest and before Brown confessed was not "alone and per se" enough to indicate that the confession was "sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Id.* at 603, 95 S.Ct. at 2261. Whether a confession is a product of free will depends on the facts of each case.

The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant....

*Id.* at 603–604, 95 S.Ct. at 2261–2262.

These factors are also applicable in determining whether to suppress evidence obtained by a voluntary consent to search given after an illegal arrest. 3 W. LaFave, *Search & Seizure*, sec. 11.4, at 644 (1978).

In this case the District Court approved the Magistrate's finding that Tovar voluntarily consented to provide the exemplars. The record of the suppression hearing fully supports this finding. Consent to a search is a valid exception to the warrant requirement of the Fourth Amendment. *United States v. Harris*, 453 F.2d 1317, 1319–20 (8th Cir.) *cert. denied* 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1972).[2]

Furthermore, there are several factors here which serve to dissipate any taint which may have been present from the illegal arrest. There is no indication that the arrest of Tovar was made for the purpose of questioning or identification. *See Brown v. Illinois, supra,* 422 U.S. at 602, 95 S.Ct. at 2261. The removal hearing is a significant intervening circumstance not present in *Brown. See Brown v. Illinois, supra,* at 603–604, 95 S.Ct. at 2261–2262; *Johnson v. Louisiana,* 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972). Furthermore, the time between the arrest and obtaining the handwriting exemplars was significantly longer than in *Brown.* The intervening time period here appears to have been about two weeks as compared with hours in *Brown.* The cumulative effect of these factors supports the conclusion that the hand-

writing exemplars were not obtained by exploitation of an illegal arrest. The trial judge correctly refused to suppress the handwriting exemplars.

### 3. *Expert Witness*

Tovar next argues that the District Court erred in its treatment of the government's handwriting expert, James Regent, in that: (1) it was improper for Regent to testify that the signatures on the money orders were "probably" the same as those on the exemplars provided by Tovar; (2) the District Court should have allowed Tovar to examine Regent about other handwriting exemplars; and (3) the District Court should have subpoenaed Regent to reappear as an expert for Tovar.

Regent testified that the signatures on the money orders were "probably" the same as those on the exemplars obtained from Tovar. Tovar urges that when Regent used "probably" to qualify his opinion he was speculating. This argument is without merit.

■ The trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Company,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962).

■ Tovar relies on decisions where courts found unfair prejudice had resulted from an expert's misleading reliance on mathematical odds. *See, e.g., United States v. Massey,* 594 F.2d 676 (8th Cir. 1979). Here Regent's use of "probably" indicates some degree of certainty based neither on mathematical odds nor mere speculation. Thus, the trial judge did not err in allowing Regent to testify as he did.

■ Also, we cannot find any abuse of discretion in the trial judge's refusal to

---

**2.** Tovar contends that this Court should remand because the District Court adopted the magistrate's report and recommendation denying the motion to suppress these exemplars without making the *de novo* review of the transcript that is required by 28 U.S.C. Sec. 636(b)(1). The parties agree that the transcript

was not reviewed by the District Court. However, this does not require remand. We have carefully reviewed the record of the suppression hearing and agree with the District Court's adoption of the magistrate's report. *See, Thompson v. Scurr,* 668 F.2d 999, 1004 (8th Cir. 1982).

require Regent, on cross examination, to compare signatures written with a felt tip pen with the signatures on the money orders. Regent testified that felt tip pen signatures were difficult to compare with the signatures on the money orders. To do so would require study in a laboratory and the results would be "very qualified and really of limited value." Cross examination was not otherwise limited.

After the Court refused to permit cross examination based on the felt tip pen exemplars, Tovar requested that the District Court subpoena Regent to appear later in the trial as an expert witness for the defense. Regent had already testified that his analysis of the felt tip signatures would be inconclusive. Therefore, the trial judge did not abuse his discretion by concluding that nothing of value would be added by requiring Regent's return. *See, United States v. Morris*, 451 F.2d 969, 971–72 (8th Cir. 1971).

### 4. Identification Testimony

■ Tovar contends that the District Court should have suppressed the identification testimony of Douglas Markling. In 1979 and 1980 Markling lived in Waite Park, Minnesota, in the same building occupied by Brewer. At trial Markling testified on direct examination that he visited Brewer's apartment on two occasions in late November or December of 1979. He recalled the names of several people in the apartment at the time including "Juan Tovar, or whatever his name is . . . ." Markling testified that he saw Tovar coming and going from the apartment building for "a good two months." The robbery of the postal station occurred on January 7, 1980. Markling also gave a physical description of the person he had seen, and stated that the occupants of the apartment said that they were from Brownsville, Texas.

On cross examination Markling was shown the two photographs he had picked

earlier from a group of pictures. Markling testified that two of the men depicted in the photographs looked familiar but he was unable to state which one of these two was the person he had seen. Markling also stated on cross examination that federal authorities had named some names and that "Juan hit a bell." He did not remember Juan's last name at that time. Tovar's attorney asked Markling whether he could make an in court identification of Tovar as the person he had seen in Brewer's apartment and Markling was unable to do so.

Tovar argues that the failure of the District Court to suppress Markling's testimony denied Tovar due process because Markling's identification was based on impermissibly suggestive procedures. Tovar failed to establish that the photo spread from which Markling picked pictures of two people that looked familiar, one of whom could have been the person he saw in the apartment, was impermissibly suggestive. Similarly, the process by which Markling recalled the name "Juan" was not shown to be impermissibly suggestive.[3]

Therefore, the District Court correctly refused to suppress Markling's testimony.

### 5. Transmitting Unlawfully Issued Money Orders

■ Tovar's final contention is that his conviction for violating paragraph 8 of 18 U.S.C. Sec. 500 by transmitting unlawfully issued money orders must be overturned because the money orders were not "unlawfully issued." Paragraph 8 provides:

> Whoever, with intent to defraud . . . the Postal Service . . . transmits . . . any money order. . . . knowing the same—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) to have been unlawfully issued without previous payment of the amount required to be paid upon such issue . . .—

---

**3.** Tovar has provided no authority for applying the concepts developed in photo-spread and line-up cases to name identification. Assuming, without deciding, that the same considerations apply the evidence does not establish that impermissibly suggestive procedures were used

in assisting Markling's recollection of names. *See Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *United States v. Mefford*, 658 F.2d 588, 590 (8th Cir. 1981), *cert. denied* —— U.S. ——, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982).

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Tovar relies on *United States v. Pettee*, 273 F.Supp. 1011 (D.Mass.1967) for the proposition that Sec. 500 only applies to wrongdoing by postal employees. *Pettee* involved paragraph 5 of Sec. 500 and not paragraph 8. Nothing in the language of paragraph 8 indicates that it is limited to violations by postal employees.

Tovar also argues that "issued" as used in paragraph 8 of 18 U.S.C. Sec. 500 refers to a voluntary act. Paragraph 8 of 18 U.S.C. Sec. 500 refers by its terms to money orders "unlawfully issued without previous payment of the amount required to be paid upon such issue ...". Here the money orders were unlawfully issued because they were stolen "without previous payment of the amount required to be paid upon such issue." We therefore find no error in the trial court's denial of the motion for acquittal on Count III.

This conclusion also disposes of Tovar's contention that he was entitled to a jury instruction defining "issue" in terms of the UCC definition as a voluntary transfer of possession. Because a voluntary transfer is not required the proposed instruction was properly rejected.

We affirm.