**UNITED STATES of America, Appellee,**

v.

**David Joseph LONGBEHN, Appellant.**

No. 87–5373.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1988.

Decided June 29, 1988.

Alan D. Margoles, St. Paul, Minn., for appellant.

Paul A. Murphy, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge,
McMILLIAN and FAGG, Circuit
Judges.

LAY, Chief Judge.

David Joseph Longbehn appeals from his judgment of conviction for making false statements to an agent of the Federal Bureau of Investigation (FBI) in violation of 18 U.S.C. § 1001. For the reasons discussed below, we reverse the decision of the district court.[1]

---

1. Magistrate Janice M. Symchych recommended that Longbehn's oral statement be suppressed for the same reasons now recited by this court. On the government's objection, the district court, conceding that it was presented with a close question, overruled this recommendation and denied Longbehn's motion to suppress. The factual record is virtually undisputed.

## Background

On September 11, 1986, Special Agent Timothy Shanley of the Minnesota Bureau of Criminal Apprehension obtained a search warrant authorizing the search of Longbehn's residence. The affidavit supporting the warrant application alleged that Longbehn, a St. Paul Police Officer, had supplied privileged police information to his uncle, William Sisson, in exchange for gratuities. At that time Sisson was under investigation as the leader of an alleged ring of methamphetamine manufacturers. Prior to executing the warrant, Agent Shanley directed Lt. Richard Dugan, head of the St. Paul Police Narcotics Unit, to locate and transport Longbehn to his residence so that he would be present during the execution of the search warrant. Longbehn was located at the police department firing range where he was detained until Dugan arrived.

When Dugan arrived at the firing range, he asked Longbehn to accompany him to his squad car, where he instructed Longbehn to remove his gun and gunbelt and place them in the trunk of the squad car. After Longbehn complied, Dugan informed Longbehn that a search warrant for his house was being signed and that Longbehn would have to ride with Dugan to police headquarters. Dugan gave Longbehn the choice of leaving his own vehicle at the firing range or having another officer drive it. Longbehn was not allowed to drive his own vehicle.

Dugan and Longbehn then drove to the St. Paul Police Annex Building where Longbehn was instructed to wait outside Deputy Chief Nord's office. After approximately twenty to thirty minutes, Dugan and Longbehn proceeded to Longbehn's residence in Dugan's vehicle where they were met by Agent Shanley and FBI Agents Michael Kelly and Robert Jacko. After the agents presented their credentials and the search warrant, Longbehn was advised by Agent Kelly that the agents were there to execute the warrant. The ensuing search lasted approximately sixty to ninety minutes. At least one of the agents chaperoned Longbehn for the duration of the entire search.

The record reflects that although Agent Kelly advised Longbehn that the agents were not at his residence to conduct an interview, three separate agents asked Longbehn probing and substantive questions about the ongoing investigation during the execution of the search warrant. No *Miranda* warnings were given. Questions were first put to Longbehn by Agent Jacko. Jacko specifically questioned Longbehn about his relationship to Sisson and his knowledge of Sisson's livelihood. Jacko also asked Longbehn if Sisson had requested that Longbehn provide him with police information. Although Longbehn acknowledged that Sisson had made such a request, Longbehn stated that he had denied Sisson's request. These statements form the basis of the indictment. The record further reflects that Agents Kelly and Shanley also asked Longbehn a series of probing questions concerning Longbehn's relationship with Sisson, his knowledge of the activities of Sisson, and items of evidence that had been seized from Longbehn's residence.

After the search was completed, Dugan returned Longbehn to police headquarters. At that time, Deputy Chief Nord instructed Longbehn that he was to surrender his badge and identification and that he was being placed on administrative leave until further notice. Longbehn was also instructed not to have any contact with the police department. Nord then informed Longbehn that he was free to leave. Between two-and-one-half to four hours elapsed from the time Longbehn was confronted by Dugan at the police firing range until his discharge from Deputy Chief Nord's office.

Longbehn was subsequently indicted for making false statements to an agent of the FBI in violation of 18 U.S.C. § 1001. Following his indictment, Longbehn moved to suppress his statements, to suppress certain evidence seized from his residence pursuant to the execution of the search warrant, and to dismiss the indictment. The district court denied Longbehn's motions.

Longbehn then entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2). This appeal followed. On appeal, Longbehn maintains that the statements that form the basis of the indictment were the product of custodial questioning in the absence of *Miranda* warnings. In addition, Longbehn argues that his statements are not within the prohibition of section 1001.[2] Because we conclude that Longbehn was deprived of his freedom to such a significant degree as to require *Miranda* warnings before questioning, we reverse the decision of the district court.

**Discussion**

As indicated, Longbehn was not given *Miranda* warnings at any time on September 11, 1986. The government maintains Longbehn was not under formal arrest or in custody at the time, and that therefore there was no need for the *Miranda* warnings. The government also asserts that even if Longbehn were in custody, *Miranda* warnings were unnecessary because as a member of the St. Paul Police Department, Longbehn was both aware of his rights and how to assert them.

■ The fact that Longbehn was not formally arrested on September 11, 1986, does not end our inquiry. The formality of "arrest is certainly not a prerequisite to a finding of custodial interrogation * * *." *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir.1985). The full panoply of protections prescribed by *Miranda* is required for official interrogations where "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Thus, the relevant inquiry in this case is whether Longbehn's freedom of action was curtailed to a degree associated with formal arrest. *Berkemer*

*v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). In determining whether Longbehn was subjected to custodial interrogation, we should consider the "totality of the circumstances." *Helmel*, 769 F.2d at 1320. In doing so, we believe that Longbehn's detention and supervision, in combination with the totality of the events and physical actions of law enforcement personnel both before and after the search, deprived Longbehn of his freedom to such a significant degree as to require *Miranda* warnings before he was questioned by law enforcement personnel.

The record reveals that Longbehn was detained at his place of employment beyond his usual work hours, and then compelled to accompany law enforcement officers on what would otherwise be his own time. Following his initial detention at the police department firing range, law enforcement personnel confronted Longbehn and immediately instructed him to remove his privately owned gun and gunbelt and place them in the trunk of a police vehicle where they were secured. Although Longbehn's vehicle was present at the scene, the police officers precluded him from using it. Rather, they required Longbehn to be transported under supervision in a police vehicle to police headquarters and then to his residence. There he was forced to open his home and submit to the execution of its search by five officers, during which he was continuously chaperoned and, despite protestations to the contrary, overtly interrogated by three separate officers. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980) (interrogation includes direct questioning, or any "practice that the police should know is reasonably likely to evoke an incriminating response from a suspect

**2.** Longbehn argues that his statements to Agent Jacko fall within the so-called "exculpatory no" exception to 18 U.S.C. § 1001. The "exculpatory no" doctrine provides a defense to prosecution under section 1001 for an individual who merely supplies a negative and exculpatory response to an investigator's questions. *See United States v. Capo*, 791 F.2d 1054 (2d Cir.1986), *rev'd on other grounds*, 817 F.2d 947 (2d Cir.1987) (en banc); *United States v. Medina de Perez*, 799 F.2d 540 (9th Cir.1986); *United States v. Tabor*, 788 F.2d 714 (11th Cir.1986); *United States v. Abrahams*, 604 F.2d 386 (5th Cir.1979); *United States v. Chevoor*, 526 F.2d 178 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). In view of our holding, we need not address this issue.

* * *."). Finally, after the search of his residence was completed, Longbehn was transported back to police headquarters. Only after being placed on administrative leave was Longbehn told by Deputy Chief Nord that he was free to go.

Although the government maintains that Longbehn was not deprived of his freedom of action to a significant degree, we find no evidence presented in this record which illustrates that Longbehn was free to leave before being discharged by Nord. Rather, we conclude that Longbehn's detention was police-dominated, inherently coercive, and tantamount to a formal arrest. *Cf. Wilson v. Coon*, 808 F.2d 688, 690 (8th Cir.1987). Thus, Longbehn should have been given *Miranda* warnings before he was questioned by law enforcement personnel.

█ We also reject the government's contention that even if Longbehn were in custody, his position as a police officer obviates the requirement of a *Miranda* warning. The requirement of *Miranda* warnings is not contingent either upon a defendant's actual or presumed knowledge of his rights or on his status but, rather, must be honored in *all* instances of custodial interrogation. *See United States v. Espinosa–Orlando*, 704 F.2d 507, 514 (11th Cir.1983); *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150.

The Constitution precludes the government from using any statement against an accused in a criminal case "stemming from custodial interrogation * * * unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Because Longbehn was subjected to custodial interrogation without the benefit of these procedural safeguards, we reverse the judgment of the district court.

FAGG, Circuit Judge, dissenting.

I believe this case must be remanded to the district court for that court to issue a supplemental order stating the findings of fact that underlie its decision. Thus, I respectfully dissent.

After a magistrate conducts a hearing on a motion to suppress, the magistrate submits to the district court proposed findings of fact and a recommendation for disposition. 28 U.S.C. § 636(b)(1)(B). A party may then file objections. *Id.* § 636(b)(1). The district court, in making a de novo determination, *id.*, renders the "final determination of the facts and the final adjudication," H.R.Rep. No. 1609, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6163 (quoting *Campbell v. United States District Court*, 501 F.2d 196, 207 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)) (hereinafter *Report*); *see Sims v. Wyrick*, 552 F.Supp. 748, 750 (W.D.Mo. 1982). In doing so, the court may accept, reject, or modify the magistrate's proposed findings or recommendations, 28 U.S.C. § 636(b)(1), and at bottom, the district court "alone acts as the ultimate decisionmaker," *United States v. Raddatz*, 447 U.S. 667, 680, 100 S.Ct. 2406, 2415, 65 L.Ed. 2d 424 (1980); *see id.* at 681–82, 100 S.Ct. at 2415–16.

Here, the Government submitted objections to specific, proposed fact-findings and to the magistrate's recommendation to grant Longbehn's motion. After reviewing the record, the district court rejected the magistrate's recommendation to grant the motion because the court concluded Longbehn was not in custody when he made the false statements. The district court, however, gave no indication of the findings of fact that supported its decision. Instead, the court included in its written decision only that it had "read and reviewed the transcript * * * [and the] submissions of both parties."

On appeal this court relies on the magistrate's proposed findings for its factual recitation. Under the statute, however, the district court must find the facts, and the magistrate's proposed findings are not binding on that court. 28 U.S.C. § 636(b)(1); *Report, supra*, at 3–4, 11, *reprinted in* 1976 U.S.Code Cong. & Admin. News at 6163, 6171; *see United States v. Shami*, 754 F.2d 670, 672 (6th Cir.1985) (per curiam); *Sims*, 552 F.Supp. at 750. The district court clearly did not accept the

proposed findings as its own, and thus, the proposed findings do not control in this case. In rejecting the magistrate's recommendation, the district court did not mention the magistrate's proposed findings. Instead, the district court stated that its decision was made from "the totality of circumstances" and was "[b]ased upon the court's review of the transcript of the proceedings." Thus, we are in no position to adopt the magistrate's proposed findings or substitute our own interpretation of the evidence, *see ante* at 452–53, for that of the district court. *See Baggett v. Program Resources, Inc.,* 806 F.2d 178, 181 (8th Cir. 1986); *Aetna Casualty & Sur. Co. v. General Elec. Co.,* 758 F.2d 319, 327 (8th Cir. 1985); *United States v. Minnesota Mining & Mfg. Co.,* 551 F.2d 1106, 1109 (8th Cir. 1977). In sum, this court cannot use the district court's failure to articulate its findings as an invitation to "engage in impermissible appellate [fact-finding]." *Amadeo v. Zant,* —— U.S. ——, ——, 108 S.Ct. 1771, 1780, 100 L.Ed.2d 249 (1988).

Undoubtedly, the district court in its de novo review of the record, which included reading the transcript and holding oral arguments, made factual determinations to support its decision to deny Longbehn's motion. In support of its decision, the district court may have found persuasive the following evidence in the record not mentioned by this court: (1) Longbehn was asked to wait at the firing range after his class was dismissed, but Lieutenant Dugan arrived within five to ten minutes; (2) Lieutenant Dugan told Longbehn he would like to speak with him, but was careful to ensure the other officers at the range did not see Dugan with Longbehn to avoid embarrassing Longbehn; (3) Lieutenant Dugan asked Longbehn to accompany him to Longbehn's house, but also told Longbehn he was free to leave; (4) Longbehn was made aware of the planned search as a professional courtesy to a fellow officer; (5) officials repeatedly told Longbehn, an experienced police officer, that he was not under arrest or in custody; (6) during the search, Longbehn could have left his home at any time; (7) Longbehn stated his willingness to cooperate with the officers,

asked whether the search related to his uncle, and indicated his desire to clarify matters; (8) only after Longbehn followed Agent Jacko into the bedroom did Jacko ask Longbehn about his uncle, and Longbehn then made false statements; and (9) Longbehn initially entered his home alone while officers waited outside to begin the search, and thus, Longbehn was allowed access to anything inside the house including two weapons. This last point clearly undercuts Longbehn's assertion he was in custody or significantly deprived of his freedom.

If the evidence previously listed played an integral part in the district court's analysis, this court's reliance on findings proposed by the magistrate would be misplaced, particularly in light of the clearly erroneous standard of review that is applicable here. *See United States v. O'Connell,* 841 F.2d 1408, 1414 (8th Cir.1988). In any event, we must have the district court's findings to complete our appellate review. The findings in this case are the touchstone of an analysis that must be based on the totality of the circumstances, which "includ[es] the individual's 'freedom to leave the scene and the purpose, place and length' of the questioning." *Leviston v. Black,* 843 F.2d 302, 304 (8th Cir.1988) (quoting *United States v. Helmel,* 769 F.2d 1306, 1320 (8th Cir.1985)). Thus, we should remand to the district court for it to articulate the fact-findings underlying the court's conclusion Longbehn was not in custody. *See Vekamaf Holland B.V. v. Pipe Benders, Inc.,* 671 F.2d 1185, 1186–87 (8th Cir.1982).

Arguably, under some circumstances, the court may affirm the district court rather than remand when the district court has relied on the magistrate's summary of the evidence and the full record supports that summary. *See Thompson v. Scurr,* 668 F.2d 999, 1004 (8th Cir.), *cert. denied,* 459 U.S. 883, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982); *see also United States v. Tovar,* 687 F.2d 1210, 1215 n. 2 (8th Cir.1982). It is an entirely different matter, however, for this court to reverse on the strength of the magistrate's proposed findings or this

court's own review of the record evidence when the district court has not completed its fact-finding role. Without the essential findings of the district court, this court will be completing the de novo review that is reserved to the district court.

Accordingly, I would remand to the district court.