PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1663
_____

UNITED STATES OF AMERICA

v.

TYSON BAKER,
                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-16-cr-00018-001)
District Judge:  Hon. Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2019

Before:   JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Opinion Filed: May 24, 2019)

Jack J. McMahon, Jr.
139 North Croskey Street
Philadelphia, PA   19103
     *Counsel for Appellant*

William A. Behe
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA   17108
     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

     Tyson Baker appeals his convictions for stealing public property and for related offenses.  He complains of the District Court's denial of his request for a jury instruction on entrapment, the jury instruction that was given on intent, and

the exclusion of his wife's testimony regarding her medical expenses. For the reasons that follow, we will affirm.

## I.     BACKGROUND

### A.     Factual History[1]

Baker was employed as a police officer by the Fairview Township Police Department in York County, Pennsylvania. In 2015, the FBI approached Baker's fellow officer Michael Bennage to assist in an investigation into allegations that Baker was involved in the theft of drug proceeds. Bennage reluctantly agreed to "keep [his] ear to the ground" and "report back to them what [he] saw or heard." (App. at 45.)

He did so. A few months later, he relayed to the FBI that Baker had suggested to him that "we … start ripping off drug dealers as a means to help financially with our individual bills and stresses of life." (App. at 48.) An FBI agent then gave Bennage a recording device to capture any future incriminating conversations. In September 2015, Bennage recorded a conversation with Baker during which, in response to Bennage's statement that he had heard of a drug dealer who would be transporting a large sum of money, Baker said it sounded "like a rip to me, a straight up rip." (App. at 52.)

---

[1] "Because the jury returned a verdict in favor of [the government], we must examine the record in a light most favorable to [the government], giving [it] the benefit of all reasonable inferences… ." *Mancini v. Northampton Cty.*, 836 F.3d 308, 314 (3d Cir. 2016) (citation omitted).

A few weeks passed without incident. Then, on November 17th, Baker apparently learned from a police report prepared by Bennage that Bennage had found cash on a drug-overdose victim, and Baker indicated he wanted some of the money. He texted, "Where's mine? LOL." (App. at 57.) Bennage responded that other officers had been watching him, to which Baker texted, "next time. LOL." (App. at 58.)

Three days afterwards, on November 20, Bennage secured a search warrant for a residence suspected to be used in illegal drug transactions. In the process of executing that warrant, Bennage and other officers discovered multiple stacks of cash amounting to $1,000 each. Baker arrived at the scene hours later, after sending an unexpected text to Bennage saying that he would help with the evidence. Baker told Bennage, "tonight's the night, don't get greedy, be smart." (App. at 70.) Later that day, after the drug proceeds had been moved to the conference room, Baker told Bennage the stacks should be "less two[]" for the two of them to split. (App. at 82, 472.) Baker ultimately told Bennage to put his share, a single stack, in a toolbox in Baker's truck.[2]

Less than a month later, on December 16th, the FBI and Bennage executed an undercover operation in which Bennage and Baker would stop an FBI agent travelling with $15,000 and posing as a drug trafficker. The operation went according to plan: Bennage pulled over the undercover officer, and Baker arrived at the scene shortly thereafter. Bennage then took the 'trafficker' in for booking, leaving Baker alone with the

---

[2] Baker, however, had driven a different car to work, so, instead, Baker unlocked his car and Bennage hid the money under the driver's side mat.

vehicle. Once alone, Baker had the car towed to a garage and searched it. He discovered a bag containing the $15,000. Unbeknownst to Baker, the FBI had installed cameras in the vehicle and remotely watched the entire process. Baker took $3,000.[3] Baker later described that theft as the result of his "ugly thoughts[.]" (App. at 478.)

He was taken into custody by the FBI two days later, and he confessed to the thefts that took place on November 20th and December 16th.

## B.    Procedural History

A grand jury returned an eight count indictment against Baker, including a charge for stealing or embezzling public money, in violation of 18 U.S.C. § 641. Baker subsequently entered into a plea agreement, pursuant to which he pled guilty to violating § 641. He was later permitted to withdraw that plea, and he eventually proceeded to trial.

At trial, Baker made three requests that are at issue on this appeal. First, he asked the District Court to give a jury instruction on the defense of entrapment, but he and the government agreed to wait until "the conclusion of testimony" for the Court to "make [its] decision whether … [he had] fairly raised [the defense]." (App. at 446.) After the close of testimony, the District Court decided that an entrapment instruction was not warranted and did not give the requested instruction.

---

[3]    Baker gave Bennage $1,000 and kept $2,000 for himself.

Second, Baker requested a jury instruction requiring the government to prove a violation of 18 U.S.C. § 641 with evidence that he had an intent to permanently deprive the government of its money, and stating that a temporary deprivation was insufficient. The District Court disagreed and instructed the jury that "[t]o steal or knowingly convert [within the meaning of § 641] means … [to do so] with intent to deprive the owner of its use or benefit either temporarily or permanently." (App. at 557.)

Third, Baker wanted to present testimony by his wife about the financial burden created by her cancer-related medical bills. Baker gave two reasons for offering that evidence: first, to demonstrate that he did not intend to permanently deprive the government of its money, and, second, to respond to the government's evidence showing his nice home.[4] The District Court concluded that the first purpose was irrelevant. As to the second purpose, the Court excluded the proposed testimony, saying there was a risk of unfair prejudice to the government due to sympathy for a cancer survivor. The District Court did, however, rule that Baker and his wife could explain the fine quality of the house, by saying, for example, that Mrs. Baker's parents helped pay for it.[5] And, the Court allowed Baker himself to testify about the burdens

---

[4] The government presented photographic evidence of Bakers' home, which Baker argued would cause the jury to think that, since he has "this big nice house with a pole barn, tractors, and all that stuff, therefore he must be stealing money." (App. at 442.)

[5] Baker did not call Mrs. Baker to testify at trial.

6

associated with his wife's medical bills, though it did not allow Mrs. Baker to discuss them.

The jury found Baker guilty of violating § 641 by stealing or embezzling public funds, and also convicted him of related offenses in violation of 18 U.S.C. §§ 1001, 1519, and 2232.[6] The District Court sentenced him to forty-two months' imprisonment, to be followed by two years of supervised release. Baker timely appealed.

## II.    DISCUSSION[7]

Baker argues on appeal that the District Court erred by (1) refusing to instruct the jury on entrapment, (2) refusing to instruct the jury that an intent to permanently deprive, as opposed to temporarily deprive, the government of property is

---

[6] Baker was found guilty of false statements, pursuant to 18 U.S.C. § 1001, falsification of records in a federal investigation, pursuant to 18 U.S.C. § 1519, and two counts of destruction or removal of property to prevent seizure, pursuant to 18 U.S.C. § 2232.

[7] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over a denial of a request for an entrapment instruction, *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016), and in assessing whether a jury instruction stated the proper legal standard, *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995). We review the District Court's decision regarding the admissibility of evidence for abuse of discretion. *United States v. Knight*, 700 F.3d 59, 62 (3d Cir. 2012).

necessary to establish theft under § 641, and (3) excluding Mrs. Baker's testimony about her medical expenses. We disagree with his contentions on all points.

### A. The District Court did not err in refusing to instruct the jury on entrapment.

Baker argues that the District Court erred in denying his "request for an entrapment instruction despite there being evidence to support one." (Opening Br. at 13.) An entrapment instruction is warranted when there is "inducement by the government to commit the crime," and "the defendant[] lack[s] [the] predisposition to commit the crime." *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016). "Under our jurisprudence, to make an entrapment defense a defendant must come forward with some evidence as to both inducement and non-predisposition." *United States v. El-Gawli*, 837 F.2d 142, 145 (3d Cir. 1988). At the least, Baker failed to carry his burden with respect to inducement, and thus an entrapment instruction was not warranted.

Inducement is not "mere solicitation" or "merely opening an opportunity for a crime[.]" *Dennis*, 826 F.3d at 690. Rather, "the defendant must show that law enforcement engaged in conduct that takes the form of persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship." *Id.* (internal quotations and citations omitted).

There is, however, no evidence that the government did anything of the sort here. At the outset, the FBI did not instruct Bennage to set up a crime or organize a sting operation. Bennage was simply asked to "keep [his] ear to the ground"

8

regarding Baker.[8]   (App. at 45.)   The first theft, on November 20, 2015, confirms that Baker, not Bennage, was the orchestrator.  Baker unexpectedly inserted himself into the processing of a crime scene, texting and offering to help with the evidence.  Baker's own testimony made clear that Bennage did not influence or otherwise motivate the decision to steal on that occasion.  Instead, Baker's motivation was:

> Being tired, not sleepy tired.  Tired.  Tired, tired mentally.  Tired – I don't remember what movie, but it was the Rocky movie that said, "Did you ever get punched in the face a thousand times?  It starts to sting after a while." Well, I was getting punched in the face, and I was tired.

(App. at 473.)

Baker's second theft, on December 16, 2015, likewise does not present evidence of inducement.  While that theft was based on an FBI undercover operation, according to Baker's own testimony, his motivation was internal, stemming from "ugly" thoughts and being "tired" and "weak."  (App. at 478.)

---

[8]   Moreover, according to Bennage, the FBI only provided Bennage with a recording device *after* Baker had expressed interest in "ripping off drug dealers."  (App. at 48.) Baker offered a conflicting account at trial, claiming that his recorded exchange with Bennage in September 2015 was the first time they had discussed the idea to steal from drug dealers, and that the suggestion to do so originated with Bennage.  But even if we disregarded the evidence indicating otherwise, Baker's testimony reveals no action taken by Bennage that went beyond "mere solicitation[.]" *Dennis*, 826 F.3d at 690.

Baker testified, moreover, that Bennage did not harass or persuade him to steal:

> Q: Officer Bennage wasn't there with you saying, take that money, take that money, was he?
> A: No, sir.
> Q: That was your personal decision, correct?
> A: Yes, sir.

(App. at 495.) Baker's actions, according to his testimony, were the result of his own decision-making, and that decision-making was, by his own admission, motivated by his mental state, not inducement by the government. *Cf. United States v. Fedroff*, 874 F.2d 178, 181 (3d Cir. 1989) ("Entrapment is a relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." (citations and quotations omitted)).

Baker thus failed to meet his burden of production with respect to entrapment, and the District Court properly refused his request for an entrapment instruction.

### B. The District Court did not err in its instruction to the jury regarding specific intent.

Baker argues that the District Court erred in refusing to include a jury instruction that an "inten[t] to permanently deprive another of their property [is necessary to demonstrate a theft] and that [a] temporary deprivation [is] not sufficient… ." (Opening Br. at 20.) That argument fails

10

because intent to permanently deprive is not an element of the offense, and its absence is not a defense.

Section 641 of Title 18 of the United States Code prohibits the stealing of public money.[9] "The Supreme Court has made clear that … § 641 was designed to apply to not only larceny and embezzlement but all instances … under which one may obtain wrongful advantages from another's property." *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974) (citations and internal quotations omitted); *see also Morissette v. United States*, 342 U.S. 246, 266 n.28, 266-67 (1952) (describing the scope of § 641, and noting "that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions"). Accordingly, courts have followed that guidance and concluded that intent to temporarily or permanently deprive the government of its money satisfies the intent element of § 641. *See United States v. Dowl*, 619 F.3d 494,

---

[9] 18 U.S.C. § 641 provides, in relevant part: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted… [s]hall be fined under this title or imprisoned not more than ten years[.]"

11

500-01 (5th Cir. 2010) (collecting cases from the Fifth, Seventh, Eighth, and Eleventh Circuits).[10]

We have addressed the same issue with respect to a similar statute, 18 U.S.C. § 661, and determined that "intent to steal" does not require an intent that there be a permanent deprivation.[11]  *United States v. Henry*, 447 F.2d 283, 284-86

---

[10] To support his argument, Baker cites two cases.  Both are inapposite.  The first merely re-states the statutory language of 18 U.S.C. § 641.  *United States v. Dupee*, 569 F.2d 1061, 1062 n.2 (9th Cir. 1978).  Moreover, that case rejected an argument similar to the one Baker now makes, that failing to return government funds amounts to a temporary deprivation or a "debtor-creditor relationship[,]" as opposed to embezzlement.  *Id.* at 1064.  The second case does not support Baker's proposed characterization of intent either.  On the contrary, the court said, "[w]hen one wrongfully and intentionally embezzles or misappropriates the property of another … the offense is complete.  The mere fact [that the defendant] intends subsequently to return the property or to make restitution to the rightful owner does not relieve his wrongful act … .  Hence, the mere fact that [a] defendant at a subsequent date made restitution of the amount of the shortage does not wipe out the offense."  *United States v. Powell*, 294 F. Supp. 1353, 1355 (E.D. Va. 1968), *aff'd*, 413 F.2d 1037 (4th Cir. 1969).

[11] 18 U.S.C. § 661 provides, in relevant part: "Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished… ." That statute criminalizes the taking and carrying

12

(3d Cir. 1971).  Following the Supreme Court's lead, we said that in "various federal statutes the word 'stolen' or 'steal' has been given a meaning broader than larceny at common law." *Id.* at 285 (citation omitted); *accord Morissette*, 342 U.S. at 266 n.28, 266-67.  We thus rejected the defendant's argument that the statute required "the intent to permanently deprive an owner of his property" and held that a jury instruction requiring simply "intent to deprive the owner of the benefit of ownership" was appropriate.  *Henry*, 447 F.2d at 284, 286.

In short, "[a]n intent to return the property does not exculpate the defendant."  *United States v. Faulkner*, 638 F.2d 129, 130 (9th Cir. 1981) (discussing 18 U.S.C. § 659); *see also Henry*, 447 F.3d at 286.  The crime is complete when the theft or embezzlement of funds occurs.  *See United States v. Duncan*, 598 F.2d 839, 858 (4th Cir. 1979), *cert. denied*, 444 U.S. 871 (1979) (discussing 18 U.S.C. § 656, and stating that "it is sufficient that the defendant at least temporarily deprive[d] the [government] of the possession, control or use of its funds" and that "[s]ubsequent restitution … is not a defense since the crime [of embezzlement or theft] is complete when the misapplication occurs").

Whether Baker told himself he was just borrowing the government's money is not relevant to his guilt.  The jury was appropriately instructed with respect to § 641.

---

away of personal property with the "intent to steal or purloin."  *Id.*

### C. The District Court did not err in refusing to allow Mrs. Baker's testimony regarding her breast cancer and medical expenses.

Finally, Baker argues that the District Court abused its discretion by excluding the testimony of his wife regarding her prior medical expenses. Baker sought to use that evidence for two purposes. First, he said "it was evidence of [his] lack of intent to permanently deprive the government of its property." (Opening Br. at 15.) Second, he thought it would rebut "the false impression that he had stolen money to improve his property[,]" an impression he feared was created by the government's introduction of pictures of his house.[12] (Opening Br. at 16.) But the District Court did not abuse its discretion in excluding that evidence.

Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Thus, with respect to Baker's first stated purpose, because intent to permanently deprive is not an element of the offense and an intent to return is not a defense, evidence offered to prove those points would be irrelevant. And, even if Mrs. Baker's testimony regarding her medical expenses were relevant, the

---

[12] To the extent that Baker argues that Mrs. Baker's testimony about her medical expenses would have "supported his defense" of entrapment, we are similarly unpersuaded. (Opening Br. at 16.) Baker was not entitled to a jury instruction of entrapment (even if that evidence had been offered to that effect), so Mrs. Baker's testimony for that purpose would have been irrelevant and was rightly excluded.

District Court was within its discretion in deciding that the probative value of such testimony was substantially outweighed by danger that the testimony regarding her cancer and medical expenses could mislead the jury due to "sympathy" for her status as a cancer survivor. Fed. R. Evid. 403. (App. at 443.)

Nor did the District Court err in excluding that testimony despite the second proffered purpose, i.e., to rebut the "insinuati[on] or … impression that [Baker] has this giant house and all these luxury items in the house, [and that] therefore he must be stealing." (App. at 443.) Baker is correct that his second purpose might be relevant to explaining or otherwise providing context behind the improvements to his home. Again, however, Federal Rule of Evidence 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In a Rule 403 analysis, we may take into account "the availability of other means of proof" when considering whether such evidence should be excluded. *Old Chief v. United States*, 519 U.S. 172, 184-85 (1997).

Here, less prejudicial evidence was available to support the same purpose. The District Court made clear that Mrs. Baker could testify to "how they obtained the house, the whole history with her mother and father … and how they got things up until the relevant time here when those pictures were taken." (App. at 444.) Moreover, it also provided that Baker himself could testify about his wife's parents, their history with the house, and his wife's medical expenses. Given that Baker and

15

his wife were permitted to testify about their financial difficulties, and Baker was able to testify about the medical expense burden, the District Court provided him ample opportunity to rebut whatever impression the Government's evidence may have given about Baker's spending. The District Court was within its discretion in deciding that any particular benefit of Mrs. Baker's testimony about her cancer-related medical expenses was substantially outweighed by the risk of understandable but irrelevant sympathy.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of conviction.

16